AMERICAN DREDGING COMPANY,
Plaintiff,

v.

FEDERAL INSURANCE COMPANY,
Fireman's Fund Insurance Co., the
Home Insurance Company, St. Paul
Fire & Marine Insurance Co., Boston
Insurance Company, Insurance Compa-
ny of North America, the American
Insurance Company and United States
Fire Insurance Company, Defendants.

No. 68 Civ. 2586.

United States District Court,
S. D. New York.

Feb. 24, 1970.

Mendes & Mount, New York City, for
plaintiff; John J. Sullivan, New York
City, of counsel.

Bigham, Englar, Jones & Houston,
New York City, for defendants; Joseph
J. Magrath, III, New York City, of
counsel.

## OPINION

FREDERICK VAN PELT BRYAN,
District Judge.

Plaintiff sues on a maritime claim to
recover upon a policy of insurance. De-
fendant insurers move pursuant to Rule
56 F.R.Civ.P. for summary judgment
dismissing the complaint or, in the alter-

native, for transfer of the action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

It appears that in September 1964 plaintiff was engaged in the construction of a pipeline crossing under the Delaware River 8 miles south of Philadelphia for the Colonial Pipeline Company (Colonial). On the night of September 1, 1964, when the pipeline was in place, the S. S. Bristol City, inbound for Philadelphia, fouled its anchor on the pipeline and did extensive damage. Under its contract with Colonial, plaintiff was obligated to repair the damage.

Plaintiff was insured by London Underwriters (London) against loss or damage to the pipeline during construction. It was also an additional assured under a policy issued to Colonial by defendant insurance companies covering, among other things, substantially the same risks.

After attempts to repair the damage, plaintiff advised Colonial that repair was impractical and that a new pipeline would have to be installed in the existing trench. After negotiations with Colonial and the defendant insurers, Colonial agreed to the proposal. Defendant insurers, however, claim that they did not assent to this proposal, but expressly rejected it as unreasonable. Though not expressly spelled out in the record before me, it may fairly be inferred that defendant companies rejected plaintiff's claim for expenses of this installation.

Plaintiff proceeded to install the new pipeline at a claimed expense of $471,-866.86. It submitted a claim for this amount to London. London paid to plaintiff the full amount of this claim under a memorandum of settlement. The memorandum stated that the payment was "without prejudice, as a loan." It was understood, however, that in consideration of the payment by London, plaintiff was to institute suit against the defendant insurers here to recover the amount of its claimed damages; that the expenses of the suit were to be borne by London; that the plaintiff would pay to London any sum recovered from the defendant insurers in full satisfaction of the so-called loan; but that if no recovery was had against the defendant insurers, plaintiff was to be under no obligation to repay London and if recovery was less than the amount paid only the amount recovered need be repaid.

On February 10, 1966, plaintiff commenced an action in the United States District Court for the Eastern District of Pennsylvania against the "Bristol City" and the Bristol City Line of Steamships, Ltd. to recover for the damage allegedly caused to the pipeline by the vessel. That action is pending.

On June 25, 1968, plaintiff commenced the suit at bar against the defendant insurers in this Court. The suit was filed by counsel who were the New York agents of London as attorneys for plaintiff. The suit is brought upon the policy issued by defendant insurers insuring against damage or loss to the pipeline being constructed by plaintiff for Colonial on which plaintiff was an insured party. Plaintiff seeks to recover the sum of $471,866.86, the precise amount advanced to it by London as the amount of its loss recoverable under the policy.

Defendants contend that on the facts presented, plaintiff is not entitled to recover on the policy of insurance which they issued and thus the claim for relief alleged in the complaint must fall. Their argument runs this way: The payment to the plaintiff of $471,866.86 by London was not, in fact, a loan but constituted payment of loss under the London policy. Plaintiff, having been paid for its loss in full by one insurer, may not thereafter recover the same loss from other insurers. The only viable right which remains after payment of the loss to the assured is the right of London to contribution from the defendants as co-insurers. The present action, though purportedly based on the policy issued by defendants, is in reality brought on behalf of London, the real party in interest. The action is merely a device to obtain for London complete

reimbursement from the co-insurers for the loss which London paid. Plaintiff, having been paid for its loss, has no right to recover the same loss a second time from these defendants.

Defendants also assert that plaintiff's claim of $471,866.86 is highly inflated and exaggerated and far exceeds the actual damage to the pipeline.

Plaintiff, on the other hand, contends that it is entitled to recover on defendants' policy the full amount of its expenses in repairing the damage despite the fact that it has already received an equivalent amount from London. Plaintiff urges that the amount received from London did not constitute payment by London of the loss but was merely a loan arrangement of a kind common in the insurance industry, that the payment made as a loan did not extinguish its rights to recover on the defendants' policy and that its right to recover the loss from any of the insurers whom it chose to sue remains unimpaired. Therefore, says the plaintiff, this suit has nothing to do with any rights of contribution there may be as between London and defendant insurers, stands entirely on its own feet and may be maintained in plaintiff's own name.

Plaintiff also asserts that Colonial is making a claim against it for an additional $69,917.21 in damages arising out of the pipeline occurrence over and above the amount paid to plaintiff by London. Plaintiff claims that this claim is covered by defendants' policy and that it was not covered by the payment from London. It therefore says that, in any event, it is entitled to maintain this suit on the defendants' policy on that claim in its own name, apart from any interest which London may have in the recovery of the amount which it paid to plaintiff by way of loan.

Loan arrangements whereby an insurer advances the amount of the loss to the assured as a loan repayable only out of the proceeds of a suit brought by the assured in its own name to recover the loss from those legally responsible therefor are common in the insurance field.

Luckenbach v. W. J. McCahan Sugar Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918); Augusta Broadcasting Co. v. United States, 170 F.2d 199 (5th Cir. 1948); Dixey v. Federal Compress & Warehouse Co., 132 F.2d 275 (8th Cir. 1942); The Plow City, 122 F.2d 816 (3rd Cir.1941).

As the Court said in Luckenbach, such agreements "supply the shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss." 248 U.S. at 148, 39 S.Ct. at 55.

In the usual agreement of this sort it is contemplated that the assured will bring suit in its own name against the party who has caused the loss and is legally responsible therefor and will reimburse the insurer out of the proceeds of the suit. In addition to providing the assured with immediate funds, this avoids the necessity of the insurer bringing an action in its own name as subrogee with such disadvantages, before a jury or otherwise, as might result to a named insurance company plaintiff.

Where such a loan arrangement is made, though the assured has had full reimbursement for its loss from the insurer it is deemed not to have received payment and retains the right to sue in its own name to recover the loss from the party who has caused it. It should be noted that in such cases, even if the loan agreement was not given effect, the insurer as subrogee would have a right of action against the party causing the loss. Where such loan agreements are given effect, the assured is considered to be the proper party plaintiff to bring suit under Rule 17(a) Fed.R.Civ.P., requiring that "every action shall be prosecuted in the name of the real party in interest." This despite the fact that the assured is obligated to pay the proceeds

of the suit to the insurer. Luckenbach v. W. J. McCahan Sugar Co., supra.

On the other hand, if no such device is used and payment has been made to the assured by its insurer, the insurer is considered to be the real party in interest under Rule 17(a) and, in an action against the party responsible for the loss, is required to sue in its own name as subrogee. See United States v. Aetna Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949) where outright payment was made by the assured without any loan receipt arrangement.

In several cases since Aetna Surety Company, presenting varying factual patterns, it has been held that though there was a loan receipt arrangement between the insurer and the assured, the insurer was the real party in interest and the suit should be prosecuted in the insurer's name. See McNeil Constr. Co. v. Livingston State Bank, 185 F.Supp. 197 (D.Mont.1960), aff'd, 300 F.2d 88 (9th Cir.1962); Condor Investment Co. v. Pacific Coca-Cola Bottling Co., 211 F.Supp. 671 (D.Or.1962). Cf. Eastman Kodak Co. v. U. S. Fidelity & Guaranty Co., 34 F.R.D. 490 (D.Md.1964); Neighbours v. Harleysville Mutual Casualty Co., 169 F.Supp. 368 (D.Md.1959). Such cases apparently go on the premise that despite the loan receipt agreement payment of the loss had in fact been made to the insured by the insurer.

■ Where two policies of insurance cover the same risk, the insured may recover the full amount of the loss from either insurer. By the same token, the insured is entitled to recover only once for the same loss. Once full payment for loss has been made, the right of the insured to recover against co-insurers of the same risk is extinguished. All that remains is the right of the insurer who has paid the loss to its assured to pro rata contribution from co-insurers. See National Investors Fire & Cas. Ins. Co. v. Pacific Indemnity Co., 359 F.2d 203 (10th Cir.1966); Lititz Mutual Insurance Co. v. Lengacher, 248 F.2d 850 (7th Cir.1957); Milan v. Providence Washington Insurance Co., 227 F.Supp. 251 (E.D.La.1964); National Surety Co. v. Massachusetts Bonding & Ins. Co., 19 F.2d 448 (2d Cir.1927); 16 Couch, Insurance 2d, § 62:1, p. 472 (2d ed. 1966).

In the case at bar, the loan arrangement between London and plaintiff differs from the usual arrangement of this sort in one important respect. The loan arrangement here does not contemplate suit by the assured against the party responsible for the loss in substitution for a suit by the insurer as subrogee. Instead, it was agreed between London and the plaintiff that suit would be brought by the plaintiff assured against the co-insurers for the full amount of the loss paid by London wholly for London's benefit. Yet, London has no right to recover on defendant's policy of insurance as such. The only right which London has against the co-insurers is by way of pro rata contribution. Thus, unlike the subrogation cases, the attempt is made here to confer on London a substantive right to which it is not entitled.

Moreover, if plaintiff were able to recover from the defendant insurers for London's benefit the full amount paid it by London, the defendant insurers in turn would have the right to pro rata contribution from London on the amount paid out to plaintiff by them in satisfaction of the loss. But defendants cannot assert such a claim against London in this suit since London is not a party. Thus giving effect to the device employed here would give rise to multiplicity of litigation.

The question is, then, whether the fiction of the loan arrangement device, appropriate though it may be in cases where remedy by way of subrogation is sought, should, in the quite different circumstances presented here, be permitted to have consequences which London and the plaintiff seek.

Giving effect to the usual loan arrangement device avoids the real party in interest rule in litigation where rights in subrogation are asserted. This has largely procedural consequences and serves useful purposes. But here the reality is that payment was made by

London to plaintiff in satisfaction of plaintiff's loss. Despite this, the loan device is sought to be used to confer on London a substantive claim for relief which it would not otherwise have. The claim on the policy, brought in the name of the plaintiff, is asserted for the benefit of but not in the name of London. It is thus sought to make London whole at the expense of the defendant insurers when London is entitled to contribution only. At the same time it would have the effect of depriving defendant insurers of the opportunity to assert their own claim for contribution against London in the same suit and compel them, if the recovery were had against them, to bring a separate action against London for such contribution.

The real party in interest rule is procedural in nature. It simply means that "An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced." 3A Moore, Federal Practice, ¶17.07, p. 221 (2d ed. 1969). Here that party is London, not the plaintiff. This is a case in which the real party in interest rule should be enforced so that London, the party having the substantive right to relief by way of pro rata contribution should be required to pursue its remedy directly against its co-insurers whose corresponding right of contribution can also thereby be protected.

■ I hold, therefore, that plaintiff is not the real party in interest here but that, on whatever claim there may be for the amount paid by London to plaintiff, London is the party who must assert it. Under Rule 17(a) an action which is not prosecuted in the name of the real party in interest shall not be dismissed until reasonable time has been allowed for ratification of commencement of the action by the joinder or substitution of the real party in interest. Therefore, plaintiff will be given a period of 30 days from the date of the order to be entered on the present motion to join London as party plaintiffs in this action upon a complaint which alleges whatever claim for relief London asserts against the defendant insurers.

Were this all, upon failure of London to join in the action, or to be substituted for the plaintiff, the complaint against the defendants would have to be dismissed. However, the plaintiff asserts that it has an additional claim on the defendant insurers' policy of $69,917.21 over and above the $471,866.86 paid to it by London on account of the loss. If plaintiff still asserts such a claim, it may amend its complaint limiting its claim against the defendant insurers upon their policy to the amount of that additional loss only. Plaintiff will be given 30 days from the date of the order to be entered on this motion to do so; otherwise, its complaint will be dismissed.

Obviously, both London's claim for contribution and the plaintiff's claim for additional loss should be adjudicated in the same action. Not only are many of the issues substantially the same, but if the plaintiff should succeed in its claim for additional loss, the defendant insurers may have a claim for contribution against London which could properly be disposed of in the same litigation.

There remains the defendants' application, in the alternative, to transfer the action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) in the event that their motion for summary judgment is denied. The application to transfer is based upon the pendency of the action by the plaintiff against the vessel which caused the damage to the pipeline and its owner in the District to which transfer is sought.

Substantial changes in the posture of this case may well take place as a result of my decision on the defendants' motion for summary judgment. I cannot determine at this time what such changes may be and how they will affect the question of transfer. In my view, it would be unwise to attempt to determine at this time whether, if and when changes in the posture of the action take

place, a transfer to the Eastern District of Pennsylvania will be appropriate. For this reason, the defendants' application to transfer is denied at this time without prejudice to a renewal upon appropriate papers after the effects of my present decision become apparent.

Defendants' motion for summary judgment is disposed of as indicated in this opinion.

Settle order on notice.