**SEABOARD SHIPPING CORPORATION,**
Plaintiff,

v.

**JOCHARANNE TUGBOAT CORPORA-
TION et al., Defendants,**

v.

**G. I. SIBRING et al., Third-Party Defend-
ants and Cross-Claimants.**

**No. 65 AD 1089.**

United States District Court,
S. D. New York.

Oct. 6, 1971.

---

Mendes & Mount, New York City, for Hull Underwriters; Brendan J. Connolly, New York City, of counsel.

Healy & Baillie, New York City, for defendant Oceanus Mut. Underwriting Assn.; Allen A. Baillie, Raymond A. Connell, New York City, of counsel.

Macklin, Hanan & McKernan, New York City, for defendant Phoenix Assur. Co. of New York, Timothy A. Hanan, W. M. Watters, New York City, of counsel.

## OPINION

BONSAL, District Judge.

Seaboard Shipping Corporation ("Seaboard") instituted an action against Jocharanne Tugboat Corporation ("Jocharanne") as owner of the barge VAL 51, to recover $7800 for the rental of a Seaboard barge and tug to off-load gasoline from the VAL 51 following her grounding off Oswego, New York, on June 16, 1964. Seaboard obtained a default judgment against insolvent Jocharanne, whose attorneys thereafter tendered to the court as Jocharanne's only assets the policies of Hull; Protection & Indemnity; and Cargo Legal Liability, insurance in force on the VAL 51 at the time of the grounding. Seaboard was permitted to serve an amended complaint against the three sets of underwriters—Hull (G.I. Sibring et al.) being Lloyd's policy (hereinafter referred to as "Lloyd's"); Protection & Indemnity (Oceanus Mutual Underwriting Association, Ltd., hereinafter referred to as "Oceanus"); and Cargo Legal Liability (Phoenix Assurance Company of New York, hereinafter referred to as "Phoenix").

In its answer, Lloyd's cross-claimed against Oceanus and Phoenix to recover approximately $83,000, plus legal fees, expended by Lloyd's in the defense and settlement of third-party litigation instituted against the insolvent Jocharanne and Lloyd's, in the New York State Supreme Court, Syracuse, New York, by local salvors to recover the unpaid costs of removing the barge and the gasoline.

The Seaboard claim was settled by equal contributions from Lloyd's, Oceanus and Phoenix. A non-jury trial was held to determine whether Oceanus and Phoenix, or either of them, was liable to Lloyd's in connection with the settlement made by Lloyd's of the New York action. No issue was raised as to the fairness of the settlement in the amount of $82,787.-44. Lloyd's contends that it is entitled to full reimbursement from Oceanus and Phoenix, while Oceanus and Phoenix contend that the liability was solely Lloyd's.

The facts giving rise to this litigation are as follows:

On June 15, 1964, the steel barge VAL 51, built in 1923 and owned by Jocharanne, was on a voyage from New York City to Ogdensburg, New York, with a bulk cargo of 50,000 barrels of gasoline. She was in tow of the tug JOAN KEHOE which anchored the VAL 51 outside the West Breakwall at Oswego, New York, to await abatement of heavy weather. Early on June 16, the VAL 51's anchor chain parted and the barge went aground some 600 to 800 feet offshore opposite the industrial plants and a residential area of the eastern section of Oswego. The grounding caused a hole in the VAL 51, allowing gasoline to leak into the adjacent water and onto the shore.

Following the grounding, Ranahan was appointed by Salvage Association, of London, to proceed to the scene of the grounding and to take charge of the salvage operation. Arriving at 9:30 p. m. on June 16, Ranahan inspected the site of the casualty. At 11:00 p. m., he was informed by the owner's representative, Rogers, that arrangements had been made for the Seaboard barge SIGNAL HILL to be towed from Ogdensburg to off-load the gasoline, thereby eliminating the danger of fire and explosion.

On June 18 and 19, part of the gasoline cargo of the VAL 51 was removed by the SIGNAL HILL. The VAL 51 was then refloated, towed into Oswego Harbor, and beached on a sandbar. Repairs were made to the VAL 51 and Ranahan recommended that the barge be towed to Kingston, Ontario, where suitable facilities were available, but Jocharanne insisted that the VAL 51 be towed to New York.

Towage to New York began on July 1, and she arrived on July 4, where she was declared a constructive total loss, and Lloyd's paid Jocharanne $200,000 for the constructive loss of the barge. Thereafter, as above stated, Lloyd's settled the salvors' litigation in the New York courts for $82,787.44, which it now seeks to recover from the other underwriters, together with its legal fees.

Jurisdiction of the court is conceded by the parties. The issue as propounded by Lloyd's is, "For whom was the assured, Jocharanne Tugboat Corp., SUING AND LABORING when it incurred the costs of removing this hazard [in Oswego, New York]?" Lloyd's contends that Jocharanne was suing and laboring for Oceanus, the P & I underwriter, and for Phoenix, the cargo underwriter; while Oceanus and Phoenix contend that Jocharanne was suing and laboring for Lloyd's, the Hull underwriters.

Ranahan's deposition was submitted at the trial, from which it appears that the VAL 51 presented a serious danger to the plants and residential area opposite which it had grounded. When he was called to the scene, he was informed that it was a hot gasoline job and that there was talk of closing down the two industrial plants. When he arrived, he found an extreme explosion hazard with gasoline floating to the depth of one inch on top of the water (pp. 4 and 8, Ex. 2). He testified that there was considerable concern being manifested by the Coast Guard and the Fire Department (10), and that the Civil Defense had been alerted to keep people away from the barge and to stop smoking in the area (27). Ranahan testified that he thought he was representing all the underwriters during the salvage operation (36).

The facts of the case establish that Jocharanne was Suing and Laboring for all three underwriters during the salvage operations at Oswego; it was obviously seeking to protect the hull of the barge; it was seeking to prevent a possible disaster through the explosion of the gasoline; and it was seeking to save as much of the gasoline cargo as possible, and indeed, some of the cargo was removed and delivered to the consignee.

Lloyd's liability under the Hull policy appears both from the face of the policy and from the fine print with the clause

"and in case of any Loss or Misfortune, it shall be lawful to the Assured, their Factors, Servants and Assigns, to sue, labour, and travel for, in and about the Defence, Safeguard and Recovery of the said Goods and Merchandises and Ship, &c., or any Part thereof, without Prejudice to this Insurance; to the Charges whereof we, the Assurers, will contribute, each one according to the Rate and Quantity of his Sum herein assured. And it is especially declared and agreed that no acts of the Insurer or Insured in recovering, Saving, or preserving the property insured, shall be considered as a waiver or acceptance of abandonment."

Oceanus's policy, in paragraph 1.(g), insures against "costs or charges of raising or removing the wreck of the ship named herein when such removal is compulsory."

The Phoenix policy covers the legal liability of the insured with respect to shipments of petroleum, including gasoline in bulk, during loading and unloading. (Para. 1) The operating area covered includes Lake Ontario, where Oswego is located, and specific mention is

made of Oswego Harbor. (Para. 4). The policy further provides, in paragraph 6

"In respect of any accident or occurrence likely to give rise to a claim under this insurance, the Assured is obligated to and shall take such steps to protect its (and the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance."

The policy includes "bulk oil" clauses, paragraph 5 of which provides—

"In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the Shipowner is not responsibile by statute or contract or otherwise, these Assurers shall nevertheless pay Salvage and/or Special Charges incurred in respect of the interests hereby insured. * * * "

In view of the foregoing, Jocharanne was Suing and Laboring for all three underwriters during the salvage operation in and about Oswego Harbor. However, in failing to follow Ranahan's recommendation that the VAL 51 be taken to Kingston, Ontario and in having the VAL 51 towed to New York, Jocharanne was not Suing and Laboring for Oceanus or Phoenix. This journey was justified only in an attempt to salvage the hull of the VAL 51, and it proved abortive.

The total cost of the removal operation was $108,684.99, of which $84,933.29 represented Sequin's expense in removing the VAL 51 from her place of grounding and part of the cost of removing the gas; $7,807.50 represented Seaboard's cost for removing gas; and $15,944.20 represented the cost of towage from Oswego to New York. The New York litigation, instituted by Sequin, was settled for $82,787.44 and the fairness of the settlement is not contested. Seaboard's claim for $7,807.50 has been settled, which reduces the total cost from $108,684.99 to $100,877.49. Therefore, multiplying the settlement figure of $82,787.44 by a fraction whose numerator is $84,933.29 ($108,684.99 less the Seaboard cost of $7,807.50 and the cost of towage from Oswego to New York of $15,944.20) and whose denominator is $100,877.49 (the total cost of $108,684.99 less the Seaboard claim of $7,807.50) gives a figure of $69,702.46 as the amount of the settlement properly attributable to the salvage costs in and about Oswego Harbor. In incurring the cost of $69,702.46, Jocharanne was Suing and Laboring for all three underwriters, and this amount should be shared by them. While, on the record, it is not possible to accurately divide the $69,702.46 between the three underwriters, each of the underwriters contributed one-third of the settlement of Seaboard's claim of $7,807.50. In so doing, it follows that the remaining costs of $69,702.46 should be borne one-third by each of the underwriters. Moreover, in settling Seaboard's claim, Oceanus and Phoenix recognized their liability and waived such defenses as failure of the Jocharanne to make a timely claim or timely notification of shipment within the terms of the policies. Indeed, in defending the New York action and in reaching a settlement of that action, Lloyd's was benefiting not only itself, but Oceanus and Phoenix as well, and in paying the settlement of $82,787.44, Lloyd's, as a matter of equity, became entitled to pro rata contribution from Oceanus and Phoenix for those expenses it paid benefiting all three companies. White Star S.S. Co. v. North British & Merc. Ins. Co., 48 F.Supp. 808, 813 (E. D.Mich.1943); American Dredging Co. v. Federal Ins. Co., 309 F.Supp. 425, 428 (S.D.N.Y.1970); Milan v. Providence Washington Ins. Co., 227 F.Supp. 251, 255 (E.D. Louisiana 1964).

Lloyd's is entitled to judgment against Oceanus in the amount of $23,234.15, being one-third of $69,702.46, together with interest from the date Lloyd's paid the sum of $82,787.44 to settle the Syracuse action.

Lloyd's is entitled to judgment against Phoenix in the amount of $23,234.15, being one-third of $69,702.46, together with interest from the date Lloyd's paid the sum of $82,787.44 to settle the Syracuse action.

The foregoing constitutes the court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

Settle judgment on notice.