Ronald MOTTA, Plaintiff,

v.

RESOURCE SHIPPING & ENTERPRIS-ES CO., Defendant.

No. 76 Civ. 5217 (CHT).

United States District Court,
S. D. New York.

Oct. 22, 1980.

Zimmerman & Zimmerman, New York City, for plaintiff; Morris Cizner, New York City, of counsel.

Walker & Corsa, New York City, for defendant; Joseph T. Stearns, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This case constitutes yet another episode in the enduring struggle to correctly interpret and apply problematic provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (hereinafter referred to as LHWCA or the Act). The question raised here is whether an insurance company to which a longshoreman's personal injury claim has automatically been assigned because the longshoreman failed to institute suit within six months of receiving his compensation award, *see id.* § 933(b), can effectively ratify the longshoreman's commencement of a damages action against the shipowner notwithstanding the plaintiff's prior relinquishment of his right to sue. Upon reviewing recent Supreme Court and Second Circuit decisions concerning LHWCA actions and the scope of recovery, as well as the relevant policy concerns, the Court concludes that the insurance company's ratification is an adequate defense to the defendant shipping company's claim that the suit was not instituted by the "real party in interest." Fed.R.Civ.P. 17(a).[1]

1. Federal Rule of Civil Procedure ("Rule") 17(a) provides:

Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same

*Background*

■ On January 12, 1974, the plaintiff Ronald Motta, a longshoreman employed by the Northeast Stevedoring Company ("Northeast"), was injured while working aboard the S/S Ocean Harmonia, a vessel owned and controlled by defendant Resource Shipping & Enterprises Company ("Resource"). Motta filed a claim under LHWCA with the Office of Workmen's Compensation Programs and a formal order was issued on April 16, 1975 granting the plaintiff the sum of $8,199.03. This action was commenced on November 23, 1976, more than six months after acceptance of the compensation award. The defendant thus contended that the suit was barred by section 33(b) of the Act which provides that:

> Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

33 U.S.C. § 933(b). Relying on *Czaplicki v. Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct.

946, 100 L.Ed. 1387 (1956) and its progeny, the plaintiff countered that the alleged assignment could be enforced only if the defendant proved that there was "no conflict of interest" between the longshoreman plaintiff and his employer, the stevedore.[2] Before these conflicting claims were resolved, the Court, at counsel's request, decided to delay consideration of the case until after the Second Circuit decided the case of *Rodriguez v. Compass Shipping Co.*, 617 F.2d 955 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 69, 66 L.Ed.2d 20 (1981). *See* Letter to the Court from Joseph T. Stearns, dated May 16, 1979. *Rodriguez* was decided on March 19, 1980. The court of appeals held that a longshoreman's LHWCA claim was automatically assigned to his employer six months after compensation was awarded even though the award was made in a "settlement agreement" and no formal compensation order was filed. *Id.* at 958–59. In the course of discussing the shipowner's defense that the longshoreman could not institute an action because his claim had been assigned to his employer, the Second Circuit stated:

> The defense raised by the defendants, that plaintiff is not the real party in interest, may always be invoked pursuant to F.R.Civ.P. 17(a), which provides that

effect as if the action had been commenced in the name of the real party in interest.

2. In *Czaplicki v. Hoegh Silvercloud, supra*, the Supreme Court held that a statutory assignment effected by section 33(b) can be invalidated if a conflict of interest exists between the longshoreman and his employer. When "the inaction of the assignee operates to defeat the employee's interest in any possible recovery," the Court stated that "the statute should be construed to allow [the longshoreman] to enforce, in his own name, the rights of action that were his originally." 351 U.S. at 531, 76 S.Ct. at 950. Since *Czaplicki* was decided, some courts have relied on the conflict–of–interest doctrine to invalidate assignments and allow longshoremen to institute their own suits against shipowners after the six–month period has expired. *See, e. g., Potomac Elec. Power Co. v. Wynn*, 343 F.2d 295 (D.C.Cir.1965); *Johnson v. Sword Line, Inc.*, 257 F.2d 541 (3d Cir. 1958).

Plaintiff's first response to defendant's motion to dismiss was that "[t]he motion must be denied as defendant did not sustain its burden of proof to show that there is no conflict of

interest between the plaintiff and the stevedore." Affidavit of Morris Cizner, sworn to August 17, 1979 ("Cizner Aff.") at 1. The Court rejects this argument. The weight of authority in this Circuit places the burden of proof on the *plaintiff* to submit evidence demonstrating a conflict of interest sufficient to nullify this statutory assignment. The court of appeals recently reaffirmed this view in *Rodriguez v. Compass Shipping Co.*, 617 F.2d 955 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 69, 66 L.Ed.2d 20 (1980). Viewing *Czaplicki* "as limited to its unique facts," *id.* at 961, the Second Circuit disagreed with the contention that the employer's mere failure to sue the shipowner demonstrated that the assignment should be invalidated on public policy grounds. Motta has presented no evidence of a conflict of interest in the case at bar. Instead, he rests solely on his assertion that the stevedore's failure to bring an action against the shipowner is "ipso facto" sufficient "to take the case out of the statute." Cizner Aff. at 2. This statement of the law is clearly erroneous and Motta's conflict–of–interest defense is without merit.

every action shall be prosecuted in the name of the real party in interest. Without this defense a defendant might be exposed to multiple suits based on the same claim.... A person, such as the employer here, to whom a claim has been assigned under § 33(b), is the real party in interest.... Assuming the assignment here to be valid, the right to sue is exclusively that of the employer, which has not joined in the action *or ratified its commencement* even though it has had a reasonable time to do so. The defense of assignment therefore is properly asserted as a procedural matter by the defendants.

*Id.* at 958 (citations omitted) (emphasis added). Seizing on the underscored portion of the Second Circuit's statement, Motta procured a letter from Northeast's insurance company asserting that it ratified the plaintiff's commencement of this suit. This letter read as follows:

We were the Longshoremen's Act Insurer of Northeast Stevedoring Co., Inc., the employer of plaintiff–claimant on January 12, 1974, the date he was injured while working aboard a Resource Shipping Enterprises Co. vessel.

We have your letter dated March 28, 1980.

We hereby ratify plaintiff–claimant's commencement and continuance of his action against Resource Shipping Enterprises Company to recover damages for the personal injuries he sustained as a consequence of the accident.

If our ratification is sufficient to preserve to plaintiff–claimant ownership of the cause of action, we shall, of course, not institute a separate action against Resource Shipping, and we will be bound by any judgment which may be rendered in said action insofar as it determines liability, or lack thereof, for the accident, and the damages recoverable, if any. We understand also that we would be bound by any release executed by the plaintiff–claimant with our approval. Our lien and credit rights are, however, to attach to the proceeds of any recovery by way of judgment of settlement and are not in any way hereby released or relinquished.

Letter to Irving Kernis, Esq. from Raymond Green, Supervising Attorney, The State Insurance Fund, dated May 6, 1980, annexed to Affidavit of Irving Kernis, Esq., sworn to May 9, 1980 ("Kernis Aff.").

In response to this letter, counsel for Resource submitted a lengthy memorandum arguing that ratification was ineffective in this case for the following reasons: (1) the plaintiff had no cause of action because all his rights were assigned prior to the commencement of the suit and thus the "purported ratification" is a "nullity, since the original action was improperly brought in plaintiff's name in the first instance" Federal Rule of Civil Procedure ("Rule") 17(a) requires that an action be brought in the "name of the real party in interest" and this requirement can properly be ignored only in extraordinary circumstances not present here; (3) the insurance company's cause of action is materially different than the cause of action that is available to a longshoreman for six months from the time the compensation award is accepted; (4) there is, or may be, a defense available to the defendant in an action brought by the insurance company that would not otherwise be available in a suit instituted in the longshoreman's name. Defendant's Memorandum of Law in Support of a Motion to Dismiss Because the Plaintiff Was Not the Real Party In Interest ("Defendant's Memorandum") at 8–9. The plaintiff, apparently content to rely on the insurance company's ratification letter, never bothered to respond to this memorandum or the arguments made therein.

*Discussion*

■ As quoted above, the *Rodriguez* court stated that after assignment, "the right to sue is exclusively that of the employer, which has not joined in the action or ratified its commencement even though it has had a reasonable time to do so." 617 F.2d at 958. While this assertion suggests that the Second Circuit would approve of ratification in LHWCA cases, the Court cannot rely solely on this statement in resolving this issue. The ratification question was not before the court of appeals and

Judge Mansfield's observation was not critical to that decision. *See Kastigar v. United States*, 406 U.S. 441, 445–46, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972) (language unnecessary to Court's decision is not binding authority). The Second Circuit has indicated that "a distinction should be drawn between 'obiter dictum,' which constitutes an aside or an unnecessary extension of comments, and considered or 'judicial dictum' where [a court] ... is providing a construction of a statute to guide the future conduct of inferior courts." *United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975). Statements falling in the latter category are considered "not binding ... [but] must be given considerable weight and can not be ignored in the resolution of [a] close question." *Id.; see Boyd v. Henderson*, 555 F.2d 56, 60 n.5 (2d Cir. 1977). Regardless of whether the *Rodriguez* ratification statement is viewed as "obiter" or "judicial" dictum, this Court adopts the view espoused by Chief Justice Marshall that

> general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 398, 5 L.Ed. 257 (1821) (referring to dicta appearing in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). Accordingly, giving due respect to the Second Circuit's reference to ratification in *Rodriguez*, this Court now turns to the arguments raised by the defendant in opposition to this procedure.

### I. *Real Party in Interest*

■ Defendant's first contention is that the purported ratification is a "nullity" because Motta had assigned his rights before the suit was instituted and thus the original action was improperly brought by him in the first place. This argument, however, miscomprehends the final provision of Rule 17(a) which states:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

As explained by Professor Moore:

> The purpose of the provision is to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. Thus its main thrust is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest.

3A Moore's Federal Practice ¶ 17.15–1, at 182 (2d ed. 1979) (footnotes omitted); *see Wadsworth v. United States Postal Service*, 511 F.2d 64 (7th Cir. 1975); *American Jerex Co. v. Universal Aluminum Extrusions, Inc.*, 340 F.Supp. 524 (E.D.N.Y.1972). The very purpose of Rule 17 ratification, therefore, is to respond to claims like that made by the defendant here. Resource's theory that the ratification is a "nullity" because the suit was originally brought by the wrong party cannot be reconciled with the underlying rationale of Rule 17. In short, the defendant's first argument is soundly countered by the Rule on which it seeks to rely.

■ Resource's second contention is that the real party in interest requirement "can properly be dispensed with only in most extraordinary circumstances, not present here." Defendant's Memorandum at 8–9. According to Resource,

> The ratification provision, as opposed to substitution provision, can only be applicable when: (1) no difference results in the nature of the cause of action, its impact on the defendant and on the courts and (2) when the original plaintiff is obliged to sue, or is at the same risk regarding the suit as the real party in interest and (3) the real party in interest is at the same risk as would be the titular plaintiff. Identity of claim and remedy,

identity of risk and agreement to abide the event are required before ratification may be permitted.

*Id.* at 11–12.

The source of the limitations posited by the defendant remains a mystery to the Court. Resource cites no authority to support the rather detailed restrictions it seeks to impose on the ratification provision. *Kenrich Corp. v. Miller,* 256 F.Supp. 15 (E.D.Pa.1966), *aff'd,* 377 F.2d 312 (3d Cir. 1967), relied upon by the defendant, is inapposite. The *Kenrich* court invalidated an assignment of the claim to the party bringing suit on the ground that the assignment was "champertous and against public policy." 256 F.Supp. at 18. According to the court, the assignment neither transferred the actual right of action against the defendants nor gave the assignee the ability to compromise or settle the claim. Indeed, the district court found that both the assignor and the assignee retained "alternative rights to prosecute this action at their own expense." *Id.* And on appeal, the Third Circuit emphasized that under Pennsylvania law, which was applied in this diversity action, the assignment agreement was illegal because it provided for "the institution of litigation by and at the expense of a person who, but for that agreement, has no interest in it, with the understanding that his reward is to be a share of whatever proceeds the litigation may yield." 377 F.2d at 314. In the case before this Court, the insurance company has relinquished its right to bring suit against the shipowner and has agreed to be bound by any judgment or release executed by the plaintiff. Furthermore, in contrast to *Kenrich,* no law prohibits this arrangement. In fact, the LHWCA expressly provides for a longshoreman's suit against the shipowner after the longshoreman has received a compensation award from his employer. The facts and holding of *Kenrich* are thus easily distinguishable from the case at bar.

Resource's reliance on *American Dredging Co. v. Federal Ins. Co.,* 309 F.Supp. 425 (S.D.N.Y.1970), is equally misplaced. In that case, a subcontractor that had been paid by its own insurance company, London Underwriters, for expenses incurred in a building project attempted to sue the insurance companies that had issued a policy to the primary contractor which covered the same loss. The court noted that it was "common in the insurance field" to enter into loan arrangements in which an insurance company advances to the insured the amount of the loss as a loan repayable only out of the proceeds of a suit brought by the insured to recover the loss from the responsible parties. *Id.* at 427. The court continued, however:

In the case at bar, the loan arrangement between London and plaintiff differs from the usual arrangement of this sort in one important respect. The loan arrangement here does not contemplate suit by the assured against the party responsible for the loss in substitution for a suit by the insurer as subrogee. Instead, it was agreed between London and the plaintiff that suit would be brought by the plaintiff assured against the co–insurers for the full amount of the loss paid by London wholly for London's benefit. Yet, London has no right to recover on defendant's policy of insurance as such. The only right which London has against the co–insurers is by way of pro rata contribution. Thus, unlike the subrogation cases, the attempt is made here to confer on London a substantive right to which it is not entitled.

Moreover, if plaintiff were able to recover from the defendant insurers for London's benefit the full amount paid it by London, the defendant insurers in turn would have the right to pro rata contribution from London on the amount paid out to plaintiff by them in satisfaction of the loss. But defendants cannot assert such a claim against London in this suit since London is not a party. Thus giving effect to the device employed here would give rise to multiplicity of litigation.

*Id.* at 428. The court therefore concluded that the named plaintiff was not the real party in interest and that London would have to pursue its contribution remedy directly against its co–insurers. *Id.* at 429.

Motta's suit, in contrast, represents the "usual arrangement" in which a party reim-

bursed for its loss by the insurer is "deemed not to have received payment and retains the right to sue in its own name and recover the loss from the party who has caused it." *Id.* at 427. This is precisely the arrangement contemplated by section 33(b) of the Act which provides that the longshoreman can institute suit within six months of accepting a compensation award. The longshoreman is thus the real party in interest even though proceeds from his suit must be used to reimburse his employer, or its insurance company, for compensation payments. *See Bloomer v. Liberty Mut. Ins. Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). Unlike the arrangement invalidated in *American Dredging,* permitting the longshoreman to sue in his own name neither "confer[s] on [The State Insurance Fund] a substantive right to which it is not entitled" nor "give[s] rise to multiplicity of litigation." 309 F.Supp. at 428. The concerns expressed in that decision, and the result reached, are inapplicable to the case at hand.

The gist of defendant's third and fourth objections to allowing ratification in this case is that the insurance company's LHWCA cause of action is "materially different" from the longshoreman's suit and may be subject to a defense that would be unavailable against the longshoreman. These objections are reflected in Resource's assertion that ratification, as opposed to substitution, is appropriate only when "no difference results in the nature of the cause of action" and the original plaintiff and the real party in interest bear equal risks with respect to the suit. While these proposed restrictions are not groundless, they are not compelled by the language or underlying purpose of Rule 17(a) and the ratification provision. Furthermore, Resource has exaggerated the difference between an insurer's suit and a longshoreman's LHWCA suit. Each of these issues will be discussed in turn.

 The purpose of the real party in interest rule is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Notes of Advisory Committee, Fed.R.Civ.P. 17(a), 1966 Amendment. A letter or document that ratifies the commencement and continuation of an action may be sufficient to cure any real party in interest defects in the suit. *deVries v. Weinstein Int'l Corp.,* 80 F.R.D. 452, 459 (D.Minn.1978); *Clarkson Co. v. Rockwell Int'l Corp.,* 441 F.Supp. 792, 797–98 (N.D.Cal.1977); Wright & Miller, Federal Practice and Procedure: Civil § 1555, at 709. The district court has discretionary authority to determine whether ratification is appropriate in a given case. *James v. Nashville Bridge Co.,* 74 F.R.D. 595, 597 (N.D.Miss.1977); *Southern Nat'l Bank of Houston v. Tri Financial Corp.,* 317 F.Supp. 1173, 1188 (S.D.Tex.1970). This discretion must be exercised in a manner consistent with the Rule's purpose to protect the defendant from subsequent litigation and to finally resolve the dispute at hand. *See James v. Nashville Bridge Co., supra,* 74 F.R.D. at 597; *Prudential Lines, Inc. v. General Tire Int'l Co.,* 74 F.R.D. 474, 476 (S.D.N.Y.1977).

The letter of ratification submitted in this case states that The State Insurance Fund, Northeast's insurance company and the real party in interest, ratifies Motta's commencement and continuance of this suit. The insurance company agrees to be bound by any judgment rendered in this action that determines liability and damages. Furthermore, it recognizes that it would be bound by any release Motta executed with the insurance company's approval. It also asserts that it will not institute a separate action against Resource. The State Insurance Fund expressly reserves its lien and credit rights and states that they will "attach to the proceeds" resulting from any judgment or settlement.

The defendant contends that having "nothing at stake in the way of potentially unrecoverable counsel fees and litigation expenses, the insurance company has nothing to lose, yet can control the outcome of the case by withholding any concession of its 'lien.'" Defendant's Memorandum at 3. In Resource's view, ratification would "insulat[e] the insurance company from the need to make any ethical or business judg-

ment on any aspect of this case although it may prove to be, at no risk, the sole beneficiary." *Id.* at 3–4. Resource also asserts that the longshoreman's and the insurance company's LHWCA suits differ "with respect to the burden of counsel fees and the cost of litigation, as well as in regard to distribution of any proceeds." *Id.* at 14.[3] For example, the defendant points out that under the Supreme Court's recent decision in *Bloomer v. Liberty Mut. Ins. Co., supra,* a longshoreman bears the expense of his own suit while the stevedore, which can recover its lien without cost, gets a free ride. If the stevedore, or its insurance company, sues on an assigned cause of action pursuant to section 33(b), it takes the chance of incurring its own litigation costs if the suit fails, and of recouping less than the full amount of its litigation expenses even if the suit succeeds. According to the defendant, "the stevedore could never obtain a fee arrangement with its own attorney on anything approaching the favorable terms accorded to it by the Supreme Court in *Bloomer.*" *Id.* at 17. Resource also contends that when the stevedore holds a lien on the recovery procured by the longshoreman, it can frustrate disposition of the case by refusing to waive or compromise its claims. When the stevedore, or its insurance company, brings an action under the Act, section 33(e) establishes the required distribution of proceeds. When the longshoreman himself sues, part of his recovery goes to reimbursing his employer and he retains the rest, minus counsel fees and litigation costs. In the defendant's view, "[p]ermitting ratification encourages the real party in interest

[the insurance company] to gamble where, if it were potentially liable for fees and litigation costs it would, perhaps, not." *Id.* at 17. Resource thus contends that ratification in LHWCA cases contravenes the "ethical considerations" underlying Rule 17(a) and is inconsistent with the Act's policy of discouraging needless litigation because it promotes actions that might not be "sufficiently savory for the insurance company or the employer to sponsor directly." *Id.* at 18.

Even assuming that some of defendant's allegations accurately describe the ratification arrangement, the Court rejects the bald assertion that this description demonstrates why ratification is inappropriate here. The ratification letter submitted by The State Insurance Fund ensures that any judgment or settlement resulting from Motta's suit will safeguard Resource against further litigation. The twin purposes of Rule 17(a) described above–protection of the defendant and effectuation of res judicata–would therefore be achieved by ratification. While this arrangement may be particularly advantageous to the insurance company, that is an issue to be resolved between Motta and The State Insurance Fund. Insofar as time, money, and resources are concerned, the cost of the company's alleged "no risk stake" is born by Motta, not the defendant. Resource, therefore, should not be able to invalidate an arrangement that is agreeable to these parties on the ground that undue benefits may inure to the insurance company. The benefits that the company may enjoy by virtue

---

**3.** Pursuant to section 33(e):

Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

(1) The employer shall retain an amount equal to–

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commission or Board);

(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

(C) all amounts paid as compensation;

(D) the present value of all amounts thereafter payable as compensation, such present

value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one–fifth of such excess which shall belong to the employer.

of this arrangement do not result in a corresponding loss to the defendant.

■ As stated in the Advisory Committee Notes on the 1966 Amendment to Rule 17(a), "[i]n its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name." This purpose would be well served by allowing The State Insurance Fund to ratify Motta's suit. Under the 1959 amendment to the LHWCA, Pub.L. 86–171, 73 Stat. 391 (1959), the longshoreman could have instituted his own action against the defendant within six months of accepting a compensation award. This amendment was enacted to resolve the preexisting dilemma of a longshoreman forced to choose between taking immediate compensation from his employer, the stevedore, or risking a third–party action against the shipowner. Congress recognized that:

> In these circumstances an injured employee usually elects to take compensation for the simple reason that his expenses must be met immediately, not months or years after when he has won his lawsuit. Circumstances like these are ready made for the unscrupulous who have been known to "stake" an injured employee while pursuing a damage suit– those who, in effect, purchase an injured employee's claim for their own monetary advantage.

> . . . . .

> The bill as amended by the committee would revise section 33 of the act so as to permit an employee to bring a third–party liability suit without forfeiting his right to compensation under the act. The principle underlying the modification of the law made by this bill, is embodied in most modern State workmen's compensation laws. The committee believe that in theory and practice this is a sound approach to what has been a difficult problem.

S.Rep.No. 428, 86th Cong., 1st Sess. 2 (1959), reprinted in 1959 U.S.Code Cong. & Ad. News, pp. 2134, 2135. While Congress provided that the cause of action would accrue to the insurance company within six months of the acceptance of a compensation award,

there is no evidence that the legislature would prohibit the insurance company from relinquishing its right to sue. The automatic assignment mechanism insured that the stevedore, or its insurance company, would have a remedy against the shipowner in the event that the longshoreman chose not to sue. This assignment may be nullified in certain limited situations where a conflict of interest is established between the stevedore and the shipowner, see, e. g., *Czaplicki v. Hoegh Silvercloud, supra; McClendon v. Charente S.S. Co.*, 348 F.2d 298 (5th Cir. 1965), or the insurance company's subrogation rights may be waived, see *Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir. 1975).

■ In short, this assignment is not absolute. The Supreme Court has recognized that both the stevedore and the longshoreman have a common interest in the longshoreman's recovery against the shipowner. *Bloomer v. Liberty Mut. Ins. Co., supra*, 445 U.S. at 75, 100 S.Ct. at 926. The stevedore's interest, however, does not detract from the salutary result produced by ratification, the enhancement and increased availability of a longshoreman's right to sue under the Act notwithstanding the acceptance of a compensation award. Indeed, the advancement of both parties' interests is consistent with two primary purposes underlying LHWCA's more recent 1972 amendments: "to benefit longshoremen" and "to conserve stevedore expenses." *Bloomer v. Liberty Mut. Ins. Co., supra*, 445 U.S. at 85, 100 S.Ct. at 932. Rule 17(a) ratification allows the parties freedom to determine who shall prosecute a suit in which they both rightfully claim an interest. In the absence of any prejudice to the defendant, this result is consistent with the underlying rationale of the Rule and the policy concerns embodied in the Act.

A similar conclusion was reached by the court in *The Owen*, 43 F.Supp. 897 (E.D.Pa. 1942), a case arising long before the enactment of the LHWCA's 1959 or 1972 amendments. The longshoreman in that case sued the shipowner for injuries sustained while aboard the ship. The shipowner's principal defense was that the longshoreman could

not maintain the action "because he accepted three payments under the [LHWCA], Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., and that under that Act such acceptance effects an assignment of the libellant's claim against a third party to his employer." *Id.* at 898. The court agreed with this statement of the facts. It noted, however, that the longshoreman had introduced into evidence an agreement executed by his employer, the stevedore, "reassigning to him the claim against any third party responsible for his injury, in consideration of his returning to it the compensation payments which it had made to him." *Id.* at 899. This agreement, the court held, was sufficient to allow the longshoreman to proceed directly against the shipowner notwithstanding the acceptance of compensation benefits. The court's reasoning, which is equally applicable here, was as follows:

> It therefore definitely appears that the employer in the case at bar has assented to the libellant's maintaining this action against a third party. In this respect this case differs from the cases relied upon by claimant, in all of which the employer either definitely opposed the claim of the employee against the third party, or there was no showing on the record of its position. This provision of the Longshoremen's and Harbor Workers' Compensation Act which transfers to the employer the rights of its employee against a third party upon the employee's acceptance of compensation is designed for the protection and benefit of the employer, not the third party wrongdoer. It entitles the employer who must pay compensation to the injured employee irrespective of fault, to enforce the employee's tort claim against any third party by whose fault the injury occurred. The third party tortfeasor was not the party sought to be protected by this provision of the Act and is given no ground thereunder to say which of two persons who may be entitled under the law to maintain an action against him may do so, except to the extent that he is entitled to protection against being exposed to action by both. Accordingly, where the employer objects to the action by the employee against the third party, or does not affirmatively assent thereto on the record, the third party may assert as a complete defense to an action by the employee the transfer of the employee's claim to the employer by operation of the Act, since otherwise he would still be subject to a like claim by the employer. Where, however, as in the case at bar, the employer, for whose protection Section 33 of the Act was adopted, has, by executing an assignment of the claim to the injured employee, disclaimed the right thus given to it by that section, the third party tortfeasor cannot rely upon the Act as a defense to a libel by the employee.

*Id.* at 899. *See also Magee v. McNany*, 10 F.R.D. 5 (W.D.Pa.1950) (relying on *The Owen* in holding that an employer, to whom an employee's New York Workmen's Compensation Act rights have been assigned, can "authorize in writing counsel for the plaintiff to institute and prosecute the right to recover damages against the [third–party tortfeasor]").

## II. *Defenses*

 The final prong to defendant's attack against ratification of the longshoreman's suit is that it would eliminate a defense to the LHWCA action that would be available to the shipowner if the suit were brought by the insurance company, the alleged "real and only party in interest." Defendant's Memorandum at 21. In Resource's view, substitution, as opposed to ratification, would not produce such an unfair result. The Court agrees that prejudice to the defendant is a factor to be considered in determining whether ratification should be permitted in a given case. And, as noted by some courts, an important function of the real party in interest rule is to enable the defendant to present all the defenses he has against the party entitled to pursue the claim. *See, e. g., Virginia Elec. & Power Corp. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974); *Celanese Corp. v. John Clark Indus., Inc.*, 214 F.2d 551, 556 (5th

Cir. 1954); *Pace v. General Elec. Co.*, 55 F.R.D. 215, 218 (W.D.Pa.1972). Therefore, careful consideration must be given to defendant's claim that ratification "may well confer a substantive right on the insurance company that it would not have if it proceeded in its own name." Defendant's Memorandum at 12.

According to the defendant, the critical substantive difference between a longshoreman's suit and an insurance company's LHWCA suit is that the insurance company, but not the longshoreman, is subject to the shipowner's defense that the injuries were caused in part by the negligence of the employer, the stevedore. The defendant correctly cites *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), and *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), for the proposition that in an action brought by the longshoreman, a shipowner will be held liable for the total amount of the longshoreman's damages even though the stevedore's negligence contributed to his injuries. The defendant errs, however, in asserting that when an insurance company sues pursuant to section 33(b), it is subject to the defense, to the extent of its compensation expenses, that the stevedore's negligence contributed to the longshoreman's injuries. Resource's view of the law is apparently based on a misinterpretation of *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1968), in which the Supreme Court held that the Act did not preclude a stevedore from pursuing an independent action against the shipowner based solely on the shipowner's breach of duty to the stevedore. The Court noted that its holding did not signal a departure from the *Halcyon* "no contribution" rule because the stevedore was not trying to impose responsibility on the shipowner for their joint negligence toward the longshoreman; the suit was not founded on the shipowner's "wrong" to the longshoreman "but on its independent wrong" to the stevedore. *Id.* at 418, 89 S.Ct. at 1152. In the defendant's view, since the stevedore's "*Burnside* cause of action" is subject to the *Halcyon* "no contribution" rule, a similar restriction

must be imposed on an action brought under section 33(b). The defendant thus concludes that the stevedore's negligence must be a defense when it, or its insurance company, sues the shipowner because it would be inconsistent with the "no contribution" rule to allow the negligent stevedore to recover its compensation expenses from the shipowner. Defendant's Memorandum at 19–21.

Notwithstanding the policy concerns raised by the defendant, this Court disagrees with its reading of the law. *Burnside* should not be read so broadly as to govern this statutorily defined cause of action, based on the shipowner's negligence toward the *longshoreman*, which would normally be subject to the same rules as the longshoreman's own suit. In *Landon v. Lief Hoegh and Co.*, 521 F.2d 756, 760–61 (2d Cir. 1975), the Second Circuit observed that *Burnside* involved an atypical situation and it was questionable whether a "*Burnside* type of action" continues to exist in light of the 1972 amendment to the Act which provided that it was "exclusive of all other remedies against the vessel." 33 U.S.C. § 905. More importantly, in discussing the interplay between *Burnside, Halcyon* and *Pope & Talbot*, the court of appeals stated:

> It is true, of course, that section 33(b) does not speak in the language of "lien" but of "an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person" . . ., but under the law, the compensation payment recoupment may not be defeated on the theory of concurrent negligence, in any event.

*Id.* at 760 n.3.

Finally, defendant's view that the insurance company's suit is subject to a defense based on the stevedore's contributory negligence is contrary to the Supreme Court's recent decision in *Edmonds v. Compagnie Gen. Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). The *Edmonds* Court held that the 1972 LHWCA amendments were not intended to establish a proportionate–fault standard to replace the judicially created admiralty rule that the

shipowner can be liable for all the longshoreman's damages that are not attributable to his own negligence. The Court thus rejected the conclusion reached by an en banc panel of the Fourth Circuit that the traditional admiralty rule had been changed to make the shipowner liable only for that share of the total damages equivalent to the ratio of its fault to the total fault. *Id.* at 258–59, 99 S.Ct. at 2755–2756. The *Edmonds* Court described how such a rule could create "many circumstances" in which the longshoreman could not recover in any way the full amount of damages determined in his suit against the vessel. *Id.* at 269, 99 S.Ct. at 2761. For example, if his damages are at least twice the benefits paid under the Act and the ship is less than 50% at fault, the total of his statutory benefits plus the reduced proportionate–fault recovery from the ship would not amount to his total damages. Furthermore, the Court continued,

> the impact of the proportionate–fault rule on the longshoreman does not stop there. Under § 933(b), an administrative order for benefits operates as an assignment to the stevedore–employer of the longshoreman's rights against the third party unless the longshoreman sues within six months. And a corresponding judicially created lien in the employer's favor operates where the longshoreman himself sues. In the past, this lien has been for the benefits paid up to the amount of the recovery. And under § 933(c), which Congress left intact in 1972, where the stevedore–employer sues the vessel as statutory assignee it may retain from any recovery an amount equal in general to the expenses of the suit, the costs of medical services and supplies it provided the employee, all compensation benefits paid, the present value of benefits to be paid, plus one–fifth of whatever might remain. Under the Court of Appeals' proportionate–fault system, the longshoreman would get very little, if any, of the diminished recovery obtained by his employer. Indeed, unless the vessel's proportionate fault exceeded the ratio of compensation benefits to total damages, the longshoreman would receive nothing

from the third–party action, and the negligent stevedore might recoup all the compensation benefits it had paid.

> Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect. Further, the 1972 Amendments make quite clear that "the employer shall not be liable to the vessel for such damages *directly or indirectly*," 33 U.S.C. § 905(b) (emphasis supplied), and that with the disappearance of the ship's contribution and indemnity right against the stevedore the latter should no longer have to appear routinely in suits between longshoreman and shipowner.

*Id.* at 269–71, 99 S.Ct. at 2761–2762 (footnotes omitted).

This passage demonstrates that the Supreme Court has rejected the view that an insurance company's section 33(b) suit is subject to the defense that the shipowner's liability should be less than the total amount of damages because the stevedore's negligence contributed to the longshoreman's injuries. In neither an insurance company's nor a longshoreman's LHWCA action can the shipowner reduce its liability by virtue of the concurrent negligence of the stevedore. The defendant's purported distinction between these two suits appears, therefore, to be nonexistent. Accordingly, the Court rejects Resource's argument that ratification is inappropriate here because it would eliminate a defense that would otherwise have been available to it.

*Conclusion*

Defendant Resource's motion to dismiss the complaint on the ground that Motta is not the real party in interest is denied. The Court concludes that ratification of a longshoreman's LHWCA action by the insurance company to which the claim has been assigned is consistent with the policies underlying Rule 17(a) and the Act. The State Insurance Fund's ratification letter, therefore, has "the same effect as if the action

had been commenced in the name of the real party in interest." Fed.R.Civ.P. 17(a).

So ordered.