UNILEVER (RAW MATERIALS)
LTD., Plaintiff,

v.

M/T STOLT BOEL and the M/T MODE-NA, their engines, boilers, etc., and N.V. Boelwerf S.A., General Navigation, Inc., Inge Steensland A/S and Parcel Tankers, Inc., Defendants.

PARCEL TANKERS, INC. and General Navigation, Inc., Defendants and Third-Party Plaintiffs,

v.

LEVER BROTHERS COMPANY, INC., Third-Party Defendant.

75 Civ. 4044 (CHT).

United States District Court,
S. D. New York.

Dec. 7, 1977.

---

Bigham Englar Jones & Houston, New York City, for plaintiff; William H. Morley, Jr., New York City, of counsel.

Freehill, Hogan & Mahar, New York City, for defendant N.V. Boelwerf, S.A.; Robert J. Babiak, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants and third-party plaintiffs Parcel Tankers, Inc., General Navigation, Inc. and Inge Steensland A/S; Kenneth L. Geller, New York City, of counsel.

Donovan, Maloof, Walsh & Kennedy, New York City, for third-party defendant; Richard E. Repetto, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants in the above-captioned case have moved to dismiss for failure to institute claim within the appropriate statute of limitations pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), thus raising a novel procedural point. Defendants are being sued for an alleged short delivery of a quantity of tallow which was shipped in their care as vessel owners and operators aboard the named defendant vessels. The shipment was sent from New York to Bromborough, England with transshipment at Rotterdam. By the terms of the tanker bill of lading covering the trans-port of the cargo, the shipper was Lever Brothers Company, Inc. ("Lever") and the consignee was Unilever (Raw Materials) Ltd. ("Unilever"), the parent corporation of Lever.

The purportedly short delivery was made on August 25, 1974, and a complaint was filed by the shipper, Lever, on August 15, 1975, 10 days before the running of the one-year statute of limitations governing such claims, Section 3(6) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6). The complaint was amended once to name a new defendant entity, and amended again on March 19, 1976 to substitute as plaintiff Unilever (the consignee) for Lever (the shipper). This amendment occurred when counsel for plaintiff realized that Unilever was the owner of the bill of lading and therefore the proper party to bring the suit. Although defendants never filed an answer to Lever's original or amended complaints, they responded to the second amended complaint naming Unilever as plaintiff by this motion, dated September 27, 1976, which argues that the last complaint was invalid because it instituted a new cause of action barred by the COGSA statute of limitations. The matter was referred to United States Magistrate Sol Schreiber to hear and make recommendation for disposition. 28 U.S.C. § 636(b)(1)(B). Magistrate Schreiber filed his report on June 30, 1977, recommending that the action be dismissed as time-barred. Plaintiff Unilever filed objections, thereby invoking the mandate that this Court determine the issue de novo. *Id.* § 636(b)(1)(C). For the reasons stated below, this Court rejects the Magistrate's recommendation and therefore denies the defendants' motion to dismiss the second amended complaint.

All of the parties and the Magistrate agree that the one-year limit for initiating COGSA actions is strictly enforced as part of the statutory scheme governing such claims.[1] *Fireman's Insurance Co. v. Gulf*

---

1. "The purpose [of the Carriage of Goods by Sea Act] was to carry over into the international sphere the uniformity achieved for American voyages in the Harter Act by mitigating the common-law 'insurer's' liability of carriers, in exchange for a prohibition of

*Puerto Rico Lines, Inc.,* 349 F.Supp. 952 (D.P.R.1972); *M. V. M., Inc. v. St. Paul Fire & Marine Ins. Co.,* 156 F.Supp. 879 (S.D.N. Y.1957), *rev'd on other grounds,* 258 F.2d 374 (2d Cir. 1958), *cert. denied,* 259 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959). Suit to recover for the short delivery of the tallow shipment could not, then, have been *initiated* beyond August 25, 1975. Defendants contend that the amended pleading filed in March of 1976 was, in effect, a belated attempt to initiate a suit involving an entirely new cause of action between themselves and a new plaintiff. Because the procedural device used to bring in Unilever was an amended pleading, the Magistrate and the parties addressed the problem as one governed exclusively by Rule 15, particularly subsection (c), which reads in pertinent part:

"Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

 Although the Magistrate acknowledged that Rule 15(a) may be utilized to substitute a new plaintiff, *see Staggers v. Otto Gerdau Co.,* 359 F.2d 292 (2d Cir.

1966); 3 *Moore's Federal Practice* ¶¶ 15.-15[4.—1, 2], at 1039–53, he concluded that the Unilever complaint was a new and time-barred proceeding because Lever never had the right to sue and the claim it brought within the limitation period was void, leaving nothing to which the post-limitation amendment could relate back. For this proposition the Magistrate relied on *Government of Pakistan v. The S. S. Ionian Trader,* 173 F.Supp. 29 (S.D.N.Y.1959), *aff'd sub nom. Meredith v. The Ionian Trader,* 279 F.2d 471 (2d Cir. 1960), a case in which an underwriter began a suit on behalf of its insured at a time when it lacked authority to do so. After it had paid the claim, thus becoming subrogated to the rights of the insured, it attempted to have the claim relate to the time of filing of the unauthorized action. It was barred from doing so because the limitation period had passed. This decision, however, predates the 1966 amendment to Rule 15(c), which added the language explicitly recognizing that an amendment may change a party against whom a claim is asserted beyond an applicable limitation period provided, in essence, that the defendant has had fair notice of the litigation during the limitation period.[2] In light of the amendment to Rule 15(c), to accept the premise that no correction by way of party amendment is proper past the running of the statute of limitations if the action timely filed did not state a cause of action between the named parties is to accept a circuity of reasoning that nullifies the addition to the Rule. The Notes of Advisory Committee on the 1966 amendment to Rule 15(c) ("Advisory Notes"), 28 U.S.C.A. (Supp.1977), acknowledge, and the language of the Rule itself clearly demonstrates, that "[r]elation back is intimately connected with the policy of the statute of limitations." The Advisory Notes give as

---

clauses in the contract of carriage lessening the carriers' liability."

*Scarburgh v. Compania Sud-Americana De Vapores,* 174 F.2d 423–24 (2d Cir. 1949). The short statute of limitations appears to be part of the quid pro quo.

**2.** The *Ionian Trader* case has been criticized by Professor Moore as a too-restrictive application of the criteria of Rule 15(c) even as those criteria were used prior to the codification of the more liberal interpretations by the 1966 amendment to the Rule. 3 *Moore's Federal Practice* ¶ 15.15[4.—1], at 1048 n.18 and accompanying text.

an example of the kind of situation which the amendment to Rule 15(c) was intended to ameliorate the case of a plaintiff who improperly names an agency of the federal government as a defendant, discovers his error after the limitation date and amends his pleading, only to find that the courts construe his amended complaint as the belated initiation of a new proceeding. "In these circumstances, characterization of the amendment as a new proceeding is not responsive to the reality, but is merely question-begging." *Id.*

Indeed, the only rational construction of the second sentence of Rule 15(c) is that it fully covers the situation where the plaintiff joined the wrong defendant during the limitation period but the correct party was fairly apprised of the existence of and nature of an action against *him*, thus making it equitable to permit prosecution of the underlying claim despite the running of the time limit. Furthermore, although the Rule does not mention substitution of plaintiffs, the same rationale clearly applies, and the Advisory Notes so recognize: "Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." *Id.*

Significantly, the foregoing language in the Advisory Notes continues with a direction to look beyond Rule 15(c) in considering the problem of the substituted plaintiff:

"Also relevant is the amendment of Rule 17(a) (real party in interest). To avoid forfeitures of just claims, revised Rule 17(a) would provide that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect in the manner there stated."

*Id.*

The true nature of the problem before the Court is thus exposed: the motion to dismiss for time-bar cannot be determined merely by a restrictive reading of the criteria established for permitting Rule

15(c) "relation back"; it must be examined according to the mandate of Rule 17(a) as well. "[I]t is essential that we recognize that the Rules were intended to embody a unitary concept of efficient and meaningful judicial procedure, and that no single Rule can consequently be considered in a vacuum." *Nasser v. Isthmian Lines,* 331 F.2d 124, 127 (2d Cir. 1964).

Rule 17(a), as amended in 1966, reads in pertinent part:

"Every action shall be prosecuted in the name of the real party in interest. . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

The Advisory Notes to Rule 17(a) state that the last sentence, added by amendment in 1966, "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Although the Rule does not explicitly discuss its effect on the operation of a limitation period, the Advisory Notes clearly allude to the suspension of the limitation period effected by proper application of the Rule. Indeed, Professor Moore states flatly that the "main thrust [of the last sentence of Rule 17(a)] is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest." 3A *Moore's Federal Practice* ¶ 17.15—1, at 17–182; *see Wadsworth v. United States Postal Service,* 511 F.2d 64 (7th Cir. 1975). Further, Professor Moore refers to the interrelationship of Rules 17(a) and 15(c), advising that "[a]lthough the language of [17(a) as amended] refers only to objections based on the real party in interest, the underlying principle should be considered consistent with other rules which

allow changes in parties to be made after a well-taken objection. . . ." *Id.* at 17–184, *citing, inter alia,* Rule 15(c).

■ Thus the set of facts before the Court calls for an application of both Rules 15(c) and 17(a). As to the latter, it is especially interesting to note that the original draft of the 1966 amendment thereto was limited to maritime actions, and the original Advisory Note which "has not been affected by the promulgation of Rule 17(a) in a broader form," states:

"A recurring factual situation in maritime cases may lead to injustice if the requirement as to real party in interest is rigidly applied. When there are claims to be asserted on behalf of maritime cargo some or all of the following conditions may be present: (1) There are numerous lots of cargo and hence numerous potential claimants. (2) *The true owner or other person entitled to sue cannot be readily determined. This results in part from the employment of diverse commercial instruments giving rise to problems of the passing of title.* These may involve problems in the conflict of laws, including the laws of foreign countries. Questions also arise as to when the rights of an insurer as subrogee have been perfected. (3) *The time for filing suit is short, either because of a short limitation period, such as the one-year period of the Carriage of Goods by Sea Act, or because the only practicable remedy is arrest or attachment of a vessel whose departure is imminent.*"

7A *Moore's Federal Practice* ¶ 0.55[3], at 403 (emphasis added). The case at bar appears to fall squarely within the spirit of this commentary, and the Court agrees that the application to all civil cases of a rule first developed to meet the special needs of maritime law in no way diminishes its applicability to the area of law from which it springs. The facts here bespeak the persistent difficulty in maritime cargo shipment cases of naming the real party in interest.

In all three complaints filed herein, it is alleged that Lever shipped a certain quantity of tallow to Unilever, and that Unilever received a lesser quantity after carriage by defendants. No one disputes that Lever filed this complaint in the good faith belief that the loss was theirs, or that it was discovered some time later that Unilever had actually sustained the loss and that the complaint was amended to name as plaintiff the party who sustained the loss.

■ Neither plaintiffs nor defendants in this case have exhibited great alacrity in sorting out the claim. Lever filed its initial complaint only ten days before the COGSA statute of limitations ran, but defendants never answered at all and never raised a Rule 17(a) objection to the filing of complaints in the name of Lever as plaintiff.[3] Indeed, were this Court to approach this question strictly from the viewpoint of Rule 17(a) it might fairly be said that defendants' motion to dismiss for the running of the statute of limitations is tantamount to an objection to the failure to name the real party in interest, and by the terms of Rule 17(a) the action could not be dismissed pursuant to this "objection" until "a reasonable time [had] been allowed . . . substitution of, the real party in interest." *Id.* However, defendants' motion was made *after* the defect was cured by the filing of the second amended complaint, at which point no objection could be raised. Looking only to Rule 17(a) then, it would seem that it is defendants' motion which is untimely.

■ However, the Court need not strain to utilize Rule 17(a) alone in disposing of this matter. By engrafting the equitable substance of Rule 17(a) onto the procedural directives of Rule 15(c), it is apparent that the two harmonize completely and offer a reasonable route to resolution. To begin outside the Rules, admiralty practice follows "the well recognized principle . . that equitable principles rather than technical rules and forms should be the para-

**3.** Although defendants complain that the second amended complaint was filed approximately seven months after the running of the COGSA statute of limitations, defendants' own motion to dismiss was not filed until six months after that.

mount consideration and that the objective is to do substantial justice between the parties." *Esso Standard (Switzerland) v. The Arosa Sun*, 184 F.Supp. 124, 127 (S.D.N.Y. 1960). Admiralty practice now follows the Federal Rules of Civil Procedure, which have been specifically incorporated into Rule A of the Supplemental Rules for Certain Admiralty and Maritime Claims, "except to the extent that they are inconsistent with these Supplemental Rules." It is nowhere suggested that the salutary principles of Rules 15(c) and 17(a) are in disharmony with admiralty practice; indeed, 17(a) as amended derives, as we have seen, from the special needs of the maritime trade. Turning to Rule 15(c), "the cases clearly state that *notice* is the critical element involved in Rule 15(c) determinations." *Staren v. American National Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976). In considering a Rule 15(c) issue,

"[t]he emphasis is to be placed on the determination of whether the amended complaint arose out of the conduct, transaction or occurrence set forth in the original pleading. The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based."

*Id.* at 1263. Nothing in the second amended complaint will alter "the known facts and issues" in this action.

 The *Staren* court also cited "identity of interest" between the original and substituted plaintiffs as a yardstick by which the propriety of a 15(c) amendment is measured. The "identity of interest" concept has been employed to determine when "it can be assumed, or proved, that relation back is not prejudicial." 3 *Moore's Federal Practice* ¶ 15.15[4.—1], at 1043–45; *see Staren, supra; Williams v. United States*, 405 F.2d 234 (5th Cir. 1968); *Travelers Indemnity Co. v. United States*, 382 F.2d 103 (10th Cir. 1967); *Fidelity & Deposit Co. v. Fitzgerald*, 272 F.2d 121 (10th Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960). It is argued by defendants in this case that there is no identity of interest between Lever and Unilever which would satisfy the standards applied in the past to determine when there is a lack of prejudice. The objection flows from the fact that, apart from being parent and subsidiary, Unilever and Lever are distinct entities. However, it must be noted that "identity of interest" is more a description of nonprejudice than a litmus test of its presence. It is not graven in stone, nor is it even embraced in the language of amended Rule 15(c). While "[t]he identity-of-interest concept, although not explicitly mentioned in the revised Rule, remains a useful test for measuring possible prejudice," 3 *Moore's Federal Practice* ¶ 15.15[4.—2], at 1050–51, the specific mandate of amended Rule 15(c), at least as it relates to the addition of a new defendant, focuses

"on the simple question of whether the party to be brought in had fair notice of the action, whether he will be prejudiced in maintaining his defense on the merits, and whether he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

*Marino v. Gotham Chalkboard Mfg. Corp.*, 259 F.Supp. 953, 954 (S.D.N.Y.1966). Paraphrased in terms of substitution of plaintiffs, the test is whether the defendants had fair notice of the action and whether the substitution of plaintiffs will alter the claim to the prejudice of the defendants.

 The facts of this case simply do not demonstrate prejudice to the defendant accruing from having to defend against Unilever instead of Lever. In fact, the opposite conclusion is all but inescapable: there is simply no reason to permit a windfall for the defendants because the vagaries of corporate structure and maritime instruments of title misled the shipper into believing that it sued in behalf of its own loss. One cargo shortage is at issue; the cargo was shipped in the care of the defendants; there are only three "parties" in the action—the shipper, the carriers and the consignee. Technical niceties of relationship or lack thereof between the shipper and the consignee ought not to obscure the facts

that the defendant is exposed to only one kind and amount of liability no matter which plaintiff sues; that a loss plainly has occurred; and that a party who was no stranger to the business transaction initiated suit within the time limit in the not unreasonably mistaken belief that it had sustained the loss. *Cf. Metropolitan Paving Co. v. Int'l Union of Operating Engineers,* 439 F.2d 300 (10th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); *Yorden v. Flaste,* 374 F.Supp. 516 (D.Del. 1974).

■ Defendants have asserted, and the Magistrate gave credence to, the argument that in a suit by Lever as plaintiff, defendants would have the benefit by way of counterclaim of 46 U.S.C. § 1303(5) which mandates, *inter alia,* that the shipper guaranty the weight of the shipment furnished and indemnify the carrier for all loses arising from inaccuracies in the amount actually provided for shipment. In view of the fact that the shipper, Lever, has been impleaded as a third-party defendant in this action, thus allowing any defenses asserted against it to be heard concurrently with the main action, the defendants' claim of prejudice is without merit.

For the foregoing reasons, the motion by defendants to dismiss the second amended complaint is denied.

So ordered.