DELTA COAL PROGRAM, W. Paul Crum, Jr., and Mark W. Leonard, Plaintiffs,

v.

Robert H. LIBMAN, et al., Defendants.

Civ. A. No. C79–2009A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 3, 1982.

David A. Rabin and Joseph R. Manning, Morris & Manning, Lawrence S. Burnat, John Christy, Schreeder, Wheeler & Flint, William Seigler, Atlanta, Ga., for plaintiffs.

Phillip A. Bradley, Long, Aldridge, Heiner & Stevens, Atlanta, Ga., Keith K. Hillbig, Smith & Hillbig, Torrence, Cal., David R. Harkleroad, Jeffrey M. Smith, Trotter, Bondurant, Griffin, Miller & Hishon, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

On September 20, 1982, this court ruled, after a conference with the parties, that Plaintiff Leonard's motion for joinder is granted, the "Co-Owners'" motion for joinder is granted, Plaintiffs Leonard and Crum's motion to dismiss voluntarily their complaint and that of Delta Coal Program is denied, the amended complaint and the amendment to the cross-claim is allowed filed, the joint motion of Leonard, Crum, Coopers & Lybrand, and Hecht to dismiss Leonard & Crum's complaint against Coopers & Lybrand and Hecht is granted, and the motion of Defendant Universal Heritage Investment Corp. to be dropped as a party is denied.

This memorandum opinion focuses on the reasons why the motion for joinder was granted.

## I. BACKGROUND OF LITIGATION

This lawsuit was filed on October 29, 1979, by Messrs. Crum and Leonard, suing on behalf of themselves individually and as representatives of the Delta Coal Program, a special type of limited partnership. Subject matter jurisdiction was based upon 15 U.S.C. § 77v, 15 U.S.C. § 78aa, and the doctrine of pendent jurisdiction. On January 11, 1980, Defendants Libman, Southeast Energy Corp., Kentucky Eastern Coal Co., and Ford Energy Corp. filed a motion to dismiss for failure to join indispensable parties. The thrust of the motion was twofold: (1) that Crum and Leonard could not represent the Delta Coal Program (hereinafter referred to as "Delta" or "the Program"), since they themselves were potentially liable to the co-owners, and (ii) that Delta was not an entity capable of suit. Specifically, the Defendants argued: "In essence, the cause of action brought by Crum and Leonard, as representatives of the other co-owners, blocks those other Co-Owners out from participation in this action.... If this Court allows Crum and Leonard to represent the other Co-Owners and recover on their behalf, it will have allowed Crum and Leonard to avoid their duties under the Federal Securities Acts." Memorandum of Authority in Support of Defendants' Motion to Dismiss for Failure to Join Indispensable Parties and for Failure to State a Claim upon which Relief Can Be Granted, at 9–10.

On March 7, 1980, the attorney then representing Crum and Leonard and Delta, Mr.

John F. Deal, filed a Motion to Stay Proceedings for Ratification of Commencement of Action. Mr. Deal stated that because of the allegations of conflict of interest between Crum and Leonard and the other co-owners, he needed an opportunity to have the consent of the co-owners with respect to the conduct of the suit and stated that there was a possibility that he was subject to a conflict of interest under DR 5–105 of the Code of Professional Responsibility. On April 29, 1980, the court issued an order staying the action until June 1, 1980. The court stated: "Regardless of whether the plaintiffs' motion properly invokes Rule 17(a), this court has ample authority to hear motions and enter orders pertaining to the proper management of cases." Order of April 29, 1980, at 2. On May 29, 1980, present counsel for Delta and the co-owners, Joseph R. Manning and the law firm of Morris & Manning, were substituted as counsel of record for Mr. Deal. On June 10, 1980, in response to Mr. Manning's request to have an additional thirty (30) days in which to familiarize himself with this case, the court stayed the action until July 7, 1980, and granted the motion of Mr. Deal to withdraw as counsel.

On July 7, 1980, Delta filed a motion to dismiss Crum and Leonard as plaintiffs in this action. Specifically, Delta argued: "In many of the pleadings, motions and other papers filed by the Defendants in this action, the Defendants have alleged the existence of conflicts-of-interests on the part of Messrs. Crum and Leonard. Neither the Delta Coal Program, nor Messrs. Crum and Leonard, nor anyone acting on their behalf has ever admitted the existence of any real conflicts-of-interest. In the interest of expediency and to deny to the Defendants the opportunity to further delay the proceedings in this action, Messrs. Crum and Leonard have requested that they be dismissed, without prejudice, as individually-named Plaintiffs in this action." Memorandum in Support of Plaintiff's Motion to Dismiss, at 1.

On October 29, 1980, a consent order granted the Plaintiff leave to amend the complaint, which added several state causes of action and a claim under the Racketeer Influenced and Corrupt Organizations Act (hereinafter referred to as "RICO"), and named Crum, Leonard, and the underwriter, Universal Heritage Investments Corporation, as defendants.

On December 15, 1980, the plaintiff filed a motion for class action certification and for leave to make its fourth amendment to the complaint, which would have had the effect of making the suit a class action. The gist of the motion was to substitute Mr. John G. Glover, a co-owner, as named plaintiff, suing on behalf of the other co-owners. On February 10, 1981, the court concluded that the class action motion was to be held in abeyance pending further order. Approximately eight (8) months later, on October 7, 1981, the court ruled that the Program generally had the capacity to maintain suit in this action, granted Crum and Leonard's motion to withdraw their previous requests to be dismissed as plaintiffs, and deferred ruling on the class action motion.[1] The court directed the parties to

---

1. In dealing earlier with the capacity of Delta to maintain this action, the court, through Judge Ward, noted:

   The initial threshold question involves the proper alignment of parties in this action. In this regard, the court must address the capacity of Delta Coal to maintain this action.[3] [3 It should be noted that this is a different question from whether Delta Coal is the *proper* plaintiff. This court will now address only the question of whether Delta Coal has the capacity to be plaintiff.] It has been contended that the Delta Coal Program is not an entity with the capacity of suing or being sued. The Program is merely a collection of individual co-owners, the argument goes, and enjoys no legal status for purposes of being a plaintiff or defendant in a lawsuit. It is argued that the Program is not a corporation, a partnership, or other legal entity capable of suing or being sued. The court is of the opinion that this question is resolved by Fed. R.Civ.P. 17(b)(1). That rule allows a partnership or other unincorporated association which has no capacity to maintain suit under state law to "sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, ...." Fed.R.Civ.P. 17(b)(1). It has been

confer and prepare a proposed consolidated plan for the completion of discovery, including the class action aspects of discovery.

By an order dated January 29, 1982, this action was transferred to the undersigned. In a status conference held in April, 1982, the court indicates that it would rule on whether Delta was the proper party plaintiff and requested counsel for Delta to choose whether they would pursue the motion for class action certification or whether they would move for the joinder of the individual co-owners.

On June 7, 1982, this court concluded that Delta did not have standing to assert violations of the Federal Securities Laws, that there existed no private cause of action for damages under Section 17(a) of the 1933 Securities Act, that Delta lacked standing to pursue its RICO claims, and that this court had jurisdiction over the state law claims through the doctrine of pendent jurisdiction. In addressing the issue of whether Delta had standing to assert violations of federal securities laws, this court carefully pointed out that it appears undisputed that any securities purchased were purchased by the individuals who made up the Program and not by Delta itself. Given, then, the Supreme Court's holding in *Blue Chip*

*Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Program's claims brought pursuant to Section 12(2) of the 1933 Securities Act, Section 10(b) of the 1934 Securities Exchange Act, and Rule 10b–5 were dismissed. Further, as the court indicated: "the issue whether the other purchasers of securities, the other co-owners of Delta Coal Program, will be added as plaintiffs in this action will be decided separately by this court. Plaintiffs may raise the possibility of substitution pursuant to Fed.R.Civ.P. 17(a) in support of a motion for joinder of the co-owners." Order of June 9, 1982, at 6. Similarly, in addressing the RICO claims, this court carefully phrased the issue in terms of the Program acting as an association or unit. As was stated, "an association lacks standing to assert an anti-trust claim on behalf of its members, *Nausau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Company,* 361 F.Supp. 967 (S.D.N.Y. 1973), *aff'd,* 497 F.2d 1151 (2nd Cir.), *cert. denied,* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974), and the court concludes Delta Coal Program likewise may not bring a RICO claim on behalf of its members." *Id.* at 10.

held that the application of this rule is not limited to the situation where the rights sought to be enforced belong to the entity itself. *See Action Alliance, Senior Citizens of Greater Philadelphia, Inc. vs. Shapp,* 400 F.Supp. 1208 (E.D.Penn.1975). Such associations have been found capable of maintaining suits to enforce federal rights of its members. *See Council No. 34, American Federation of State, County, and Municipal Employees, AFL–CIO vs. Ogilvie,* 465 F.2d 221 (7th Cir. 1972); *Alston vs. School Board, City of Norfolk,* 112 F.2d 992 (4th Cir.) *cert. denied,* 311 U.S. 693 [61 S.Ct. 75, 85 L.Ed. 448] (1940).

The court concludes that the Delta Coal Program constitutes an unincorporated association for purposes of Rule 17. In *Penrod Drilling Company vs. Johnson,* 414 F.2d 1217 (5th Cir.1969), the Court adopted the definition of "association" contained in C.J.S. as "a body of persons acting together, without a charter, ... for the prosecution of some common enterprise." 414 F.2d at 1222. In *United Steel Workers,* 327 F.Supp. 1400 (W.D.Pa. 1971), the Court defined an unincorporated association for purposes of Rule 17(b) as "a voluntary group of persons, without a char-

ter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." 327 F.Supp. at 1403. By either definition, it is clear that the Program would be an unincorporated association. The Program consists of a group of individuals voluntarily bound together for purposes of working toward a common objective, the purchase of working interest in certain coal leases. As such, the Program would constitute an unincorporated association. *See Associated Students of University of California at Riverside vs. Kleindienst,* 60 F.R.D. 65 (C.D.Cal.1973). Further, there can be no question that the Program is seeking to vindicate rights arising under federal law. *See United Industrial Corporation vs. Nuclear Corporation of America,* 237 F.Supp. 971 (D.Del.1964). Since it is an unincorporated association suing to vindicate substantive rights arising under the laws of the United States, the court concludes that the Delta Coal Program has the capacity to maintain suit in this action.

*Delta Coal Program vs. Libman,* Civil Action No. C79–2009A, Order of Court at 7–8 (N.D.Ga. October 7, 1981) (Ward, J.).

On June 16, 1982, the Plaintiff filed a Notice of Election, which indicated that the Program would withdraw the motion for class certification previously filed and would move for an order joining the individual co-owners of the Program as individual plaintiffs in substitution of the Program.

## II. PRESENT STATUS OF THE CASE AND THE PARTIES' CONTENTIONS

On June 18, 1982, William J. Leonard and the "Co-Owners" filed motions for joinder and other relief. They argued that each of the Co-Owners is permitted to join or intervene as a plaintiff in the action, in substitution of the Program, pursuant to Fed.R.Civ.P. 17, 19, 21, and 24. In addition, they argue that the relation back provisions of Fed.R.Civ.P. 15(c) are operative.

On June 24, 1982, Plaintiffs Mark W. Leonard and W. Paul Crum filed a motion to dismiss voluntarily their complaint against the defendants conditioned upon the further dismissal of the complaint of the Delta Coal Program and that of any parties joined or substituted in lieu of the Program. In support of their motion to dismiss, they argue that this court does not have pendent jurisdiction over the Program's state law claims for if this court permits Plaintiffs Crum and Leonard to dismiss their action, there will be no federal claim to which the Program may append its action, and that Plaintiffs Crum and Leonard are entitled to a dismissal of their complaint as well as that of the Program. Furthermore, they state that in the event that this court should rule that the Program's complaint will not be affected by Crum and Leonard's motion to dismiss, then they request to remain in this action as Plaintiffs.

On July 7, 1982, the Program provided a response. They argue that the issue in this action is not whether Delta has standing to pursue its federal securities law claims, but rather whether Delta is the real party in interest. Furthermore, they characterize this Court's June Order as in the nature of a conditional order of dismissal, by inviting Delta to cure a defect by moving for substitution of the individual co-owners. Finally, Delta argues that an acceptance of Crum and Leonard's argument would effectively read Fed.R.Civ.P. 17(a) out of the Federal Rules of Civil Procedure. Thus, the Co-Owners contend that Fed.R.Civ.P. 17(a) is designed for use in a situation such as this where the named plaintiff is not the proper party and the proper party is sought to be substituted.

On July 12, 1982, Defendants Libman, Southeast Energy Corp., Kentucky Eastern Coal Co., and Ford Energy Corp. filed a brief in opposition to the motions for joinder and other relief. These defendants argue that substitution under Fed.R.Civ.P. 17(a) should not be permitted where, as in this action, the movants and their counsel have been guilty of inexcusable neglect, and even if this court allows joinder of the individual co-owners, the issue of whether the claims by these individual co-owners of the Program are barred by the applicable statute or statutes of limitation should be deferred and should not be ruled upon in the context of this motion for joinder. They contend that the issue of "relation back" may well involve factual questions concerning the possible prejudice to each of the defendants of allowing joinder at this late date, as well as the diligence of each individual.

On July 12 and 14, Plaintiffs Crum and Leonard filed briefs in opposition to the co-owners' motions for joinder and other relief and a reply to the response of the Program to their motion to dismiss, respectively. These briefs raise four arguments. First, Crum and Leonard argue that the motion for joinder must be denied because there exists no complaint to amend, relying on *Summit Office Park, Inc. v. United States Steel Corp.,* 639 F.2d 1278 (5th Cir. 1981). Second, they argue that the co-owners are not entitled to joinder or substitution under Rule 17 since that Rule does not permit a party who has improperly asserted a cause of action to offer an amendment which would have the effect of creating jurisdiction where none existed before.

Third, they contend that the purpose of Rule 17 is merely to correct misnomers in the names of the parties so that a properly commenced action may continue, and not to permit substitution of parties so as to create jurisdiction where none existed. Fourth, they argue that they have been prejudiced by the conduct of the co-owners. They maintain that they have made more progress pursuing their claims than has the Program, pointing to a recently concluded settlement with Coopers & Lybrand.

On July 21, 1982, Defendant Universal Heritage Investment Corp. filed a response to the motions for joinder and other relief. This Defendant argues that Delta is without standing to amend the complaint, also relying upon *Summit Office Park, Inc. v. United States Steel Corp., supra.* It also contends that the co-owners' reliance on Fed.R.Civ.P. 19, 20, 21, and 24 is misplaced. Finally, this Defendant maintains that the proposed amendments cannot relate back under Fed.R.Civ.P. 15(c), inasmuch as they establish a new and independent cause of action and they are necessitated as a result of the co-owners' own inexcusable neglect.

On July 23, 1982, a consolidated response was filed by the co-owners in reply to the defendants' opposition to their motions for joinder and other relief. The co-owners present a five-prong argument. First, relying upon *Unilever v. M/T Stolt Boel,* 77 F.R.D. 384 (S.D.N.Y.1977), they contend that to hold that the real party in interest could not be substituted for a plaintiff which was found not to be such would render nugatory that entire body of law. Second, they argue that any delays in this action were actually caused by Crum and Leonard as it was they who brought the suit. Third, the co-owners assert that there is a sufficient identity of interest between the Program and the co-owners. Furthermore, they suggest that the defendants had notice of the identities and interests of the co-owners even before the suit was filed. Fourth, they state that Crum and Leonard attempt to make the identity of interest requirement an end in itself; they suggest, rather, that it is not an end in itself but simply a means of determining whether the existing Defendants and Crum and Leonard would be prejudiced. Fifth, in response to the brief filed by the Libman Defendants, they argue that the factual development of this action shows that Delta was not at fault for any delay in their seeking for leave to intervene or substitute.

On August 13, 1982, Crum and Leonard filed a supplemental brief in which they argued that every single one of the co-owners must seek to intervene in order to have a complete identity of interests. In addition, they argue that if the co-owners' motion is granted, the payment of attorney's fees to Defendants Crum and Leonard is warranted.

On September 7, 1982, Defendant Universal Heritage Investment Corp. filed a motion pursuant to Fed.R.Civ.P. 21 for an order dropping them as a party to this action on the ground that this court is without jurisdiction to adjudicate the claims against it. Relying upon *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), this defendant contends that unlike the other defendants in this action, it has not been sued by any party other than Delta and therefore no federal claim whatsoever stands asserted against this defendant.

On September 17, 1982, the co-owners filed a response to the motion of Defendant Universal Heritage Investment Corp. They argue that *Aldinger* is inapposite, inasmuch as this is not a case where Delta has never asserted a federal claim against that defendant. They suggest that federal claims were once asserted by Delta against Universal in addition to the pendent state claims, and that those federal claims have been dismissed temporarily.

## III. REAL PARTIES IN INTEREST

■ The federal claims in this action must, of course, be raised by the real parties in interest. Fed.R.Civ.P. 17(a). That rule was amended in 1966 to provide that:

> No action shall be dismissed on the ground that it is not being prosecuted in the name of the real party in interest until a reasonable time has been allowed

after objection for ... joinder or substitution of the real parties in interest ....

■ The substitution or joinder ought to be allowed to prevent forfeiture or injustice (1) when an understandable mistake has been made in determination of the proper party or where that determination is difficult. [1966 Notes of Advisory Committee on Fed.R.Civ.P. 17(a); *Hobbs v. Police Jury of Morehouse Parish,* 49 F.R.D. 176, 180 (W.D.La.1970); *Crowder v. Gordons Transports, Inc.,* 387 F.2d 413, 418–19 (8th Cir. 1967)]; (2) where the change is merely formal and does not materially alter the known facts or issues [*Compare Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); *Staren v. American National Bank,* 529 F.2d 1257 (7th Cir.1976), and *Unilever v. M/T Stolt Boel,* 77 F.R.D. 384 (S.D. N.Y.1977), *with Summitt Office Park v. United States Steel,* 639 F.2d 1278 (5th Cir. 1981)]; and (3) where the original plaintiff was not a fictitious entity; (4) if done timely.

■ Here, the main thrust of the complaint is violations of federal securities laws and fraud. If the substitution is not allowed, the Co-owners will lose their right to assert these claims, for it would appear that the limitations period has run as to both.[2]

The mistake made in the denomination of the plaintiff is excusable. Crum and Leonard had the right to maintain the suit for themselves as Co-owners. They also sought to represent to the other Co-owners at that early stage when a class action was definitely possible. It may not have been seen by the original plaintiffs as desirable or necessary to make the showings required by Fed.R.Civ.P. 23 for in so many instances, as Judge Ward noted, partnerships and associations have been allowed to maintain actions in federal court for the benefit of their members. In fact, Rule 17(b)(1) provides that an association or partnership may maintain an action in its common name to enforce rights granted under federal law.

A class action with Crum and Leonard only later ceased to be viable when the possibility of a conflict was raised, and they were sued by other members of the possible class. Further, it is noted that the conflict problems were raised very early in the suit, and this contention froze the orderly development of the action and ultimately lead to conflict between partners which, understandably, caused the original actors to wish to abandon the litigation and the interest of their partners as well.

The court has carefully evaluated the third amended complaint which is the charging paper that the co-owners wish to travel on. It appears that it accomplishes the substitution primarily and is not seen as materially altering any known fact or issue. The change, then, is merely a formal retitling of the plaintiff.

The third requirement for substitution is met for none of the original parties are fictitious. Finally, the request for substitution is timely. Timeliness in cases such as this, where there is a genuine dispute concerning the right of the initial party to maintain the suit, is reckoned from the date of the court determination of a challenge to the interest of that party. *Garcia v. Hall,* 624 F.2d 150, 151 n. 3 (10th Cir.1980). Here, the request came within eleven days of such determination.

■ As the requirements of Rule 17(a) are met, the co-owners denominated in the third amended complaint are substituted for the Delta Coal Program. This result is unaffected by the fact that only 31 of 37 co-owners seek the substitution. Crum and Leonard argue that as Delta sought to represent all the co-owners, no less than all may be substituted, or else that will not be an identity of interest. This misses the point of Rule 17. An identity of parties is

---

**2.** The federal securities actions should have been brought within two years, *Diamond v. LaMotte* (Current), Fed.Sec.L.Rep. ¶ 98,807 (N.D.Ga. June 29, 1982), and the fraud count must have been brought within four years, Ga. Code Ann. 3–1001. The statute of limitations on the RICO count may not have run, for the five year Georgia statute of limitations seems to apply. *Ingram Corp. v. J. Ray McDermott & Co.,* 495 F.Supp. 1321, 1324 n. 4 (E.D.La.1980); Ga.Code Ann. 16–14–8 (1982).

not required; a substantial identity of issues is. The failure to join all co-owners may create other substantive problems, but that failure will not automatically bar a substitution of real parties in interest.

## IV. JURISDICTION

When the court earlier dismissed the federal securities and RICO charges of Delta Coal, it suggested utilization of the Rule 17(a) procedure to cure the defects it found. It retained jurisdiction of the state actions on the theory of pendent jurisdiction.

■ Universal Heritage Investment Corp. particularly urges that upon the dismissal of the federal claims of Delta against it, it should have been dismissed as Crum and Leonard individually had not made it a defendant under their federal claims. Accepting this assertion as true, it does not entitle Universal Heritage Investment Corp. to dismissal because the dismissal of Delta's federal claims was not unconditional. The court retained jurisdiction of the federal claims for a reasonable time to allow substitution of real parties in interest. Thus, there has been no hiatus in the court's federal question jurisdiction.

Even if this were not the case, this court would have the discretion to exercise pendent jurisdiction over the state claims against Universal Heritage Investment Corp. That party's reliance upon *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), is misplaced. In that case, the plaintiff undertook to bring in a party against whom no federally cognizable claim was laid and to append that state cause of action to his federal suit against another. Both causes arose out of the same nucleus of operative facts. Here, the situation is more akin to that presented in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the court retained pendent issue jurisdiction over the state charges which accompanied federal charges against the same party even after the federal claims were found to be wanting in merits. The court need not now decide whether it wishes to exercise its discretion to retain the state charges for it

has not, under the Rule 17(a) mechanism, ever lost jurisdiction.

## CONCLUSION

The motion of the co-owners to be substituted for Delta Coal Program is ALLOWED and they are joined as plaintiffs with Crum and Leonard. The motion of Universal Heritage Investment Corp. to be dismissed is DENIED as is the request of Crum and Leonard to dismiss their complaint on the conditions they impose. The third amended complaint is ALLOWED FILED.

The court assumes that because the substitution and joinder was allowed under Rule 17(a) no question remains as to whether the amendment relates back, but the parties may brief the issue if done within thirty (30) days. The court will hear evidence on the motion to disqualify counsel at the time and place to be noticed hereafter.

Furthermore, Crum and Leonard's motion to amend minute order of this court entered September 21, 1982, is DEFERRED. In order to determine whether this order shall be subject to an immediate appeal under 28 U.S.C. § 1202(b), the court requests that briefs be filed within thirty (30) days of the date of this order. These briefs should address the following:

Whether this order involves a controlling question of law as to which there is substantial ground for difference of opinion.

The Clerk of Court is DIRECTED to resubmit Crum and Leonard's motion to amend minute order as well as submit motions filed pursuant to 28 U.S.C. § 1292(b) thirty (30) days from the date of this order.