BERISFORD METALS
CORPORATION,
Plaintiff,

v.

M/V COPIAPO, her engines, boilers, etc., New Sun Shipping Co., S.A., Compania SudAmericana de Vapores, and Chilean Line, Inc., Defendants.

COMPANIA SUD–AMERICANA DE
VAPORES, Defendant and
Third-Party Plaintiff,

v.

UNIVERSAL MARITIME SERVICE
CORP., Third-Party Defendant.

No. 85 Civ. 2171 (JMW).

United States District Court,
S.D. New York.

Dec. 23, 1986.

William Warner, Symmers, Fish & Warner, New York City, for plaintiff.

J. Scott Provan, Kirlin, Campbell & Keating, New York City, for defendant Compania Sud-Americana de Vapores.

William C. Bell, Grainger, Tesoriero & Bell, New York City, for third-party defendant Universal Maritime Service Corp.

WALKER, District Judge:

The instant dispute arises out of the mysterious disappearance of 28 bundles of tin ingots. Plaintiff Berisford Metals Corporation ("Berisford"), an importer and purchaser of the ingots, moves for summary

judgment on its claims for breach of contract and negligence against Defendants M/V Copiapo ("Copiapo"), the vessel which contained the ingots, as well as Defendants New Sun Shipping Co., S.A., Compania Sud Americana de Vapores ("CSAV") and Chilean Line, Inc., common carriers who arranged for the transportation of the ingots. Berisford also seeks to join as plaintiffs two other parties who allegedly possess interests in the tin: Seguros Illimani S.A. ("Seguros"), which issued an insurance policy protecting the ingots, and Empresa Nacional De Fundiciones ("ENDF"), a state-owned Bolivian smelting plant which sold the ingots to Berisford and purchased the insurance policy from Seguros. Defendant CSAV moves for summary judgment on its claim as a third-party plaintiff against Third-Party Defendant Universal Maritime Service Corp. ("UMS"), a stevedore which unloaded the ingots when the Copiapo docked in Newark, New Jersey.

This Court grants Plaintiff Berisford's motion to join Seguros and ENDF as plaintiffs. Bills of lading executed by CSAV in favor of Plaintiff Berisford entitle Berisford to succeed on its motion for summary judgment. Also, since Third-Party Defendant UMS has failed to rebut the presumed breach of warranty established by Third-Party Plaintiff CSAV, this Court grants CSAV's motion for summary judgment.

## STATEMENT OF FACTS

During early 1984, ENDF contracted to sell 6,000 tin ingots to Plaintiff Berisford, with Berisford agreeing to pay only for the ingots actually delivered to Newark, New Jersey. All ingots shipped pursuant to the contract were insured by Seguros under a contract purchased by ENDF.

Berisford subsequently contracted with CSAV for transportation of the tin, receiving bills of lading from CSAV for 6,000 ingots. These ingots were packaged in 400 bundles, which each contained 15 ingots. On April 18, 1984 the ingots were loaded at Arica, Chile on the vessel Copiapo. Defendant CSAV counted the ingots and found that 400 bundles were loaded on the

ship. CSAV took extensive precautions to secure the tin inside the ship and separate this cargo from other goods also transported aboard the Copiapo. Prior to reaching Newark, New Jersey, the ultimate destination of the ingots, the Copiapo stopped at the ports of Guayaquil, Ecuador; Norfolk, Virginia; Baltimore, Maryland; Philadelphia, Pennsylvania; and New Haven, Connecticut, unloading various goods at each port.

On May 15, 1984, the Copiapo dropped anchor in Newark. On May 17, 1984, Third-Party Defendant UMS, hired by CSAV to perform services as a stevedore, completed its task of hoisting the ingots from the ship's hull and dropping the tin onto the wooden Newark dock. Once all the tin was unloaded, a member of Copiapo crew again counted the ingots and found that UMS had removed 400 bundles of ingots. UMS has produced no affidavits or other evidence indicating that it took steps to count or secure the ingots on its Newark dock after taking custody of the tin.

During the afternoon of May 17, a UMS foreman reported that some of the tin was missing. A Berisford agent later counted the ingots and found that 28 bundles containing 420 tin ingots were missing. Since Berisford agreed to pay ENDF only for the number of ingots actually delivered to Newark, ENDF, and its surety Seguros, retain ownership of the missing tin and have suffered the losses resulting from the disappearance of the 420 ingots.

On March 20, 1985, Plaintiff Berisford commenced the instant action, alleging breach of contract and negligence. On April 8, 1985, CSAV, which issued the bills of lading for 6,000 ingots to Berisford, instituted an action against Third-Party Defendant UMS, alleging breach of contract, breach of warranty, and negligence.

## DISCUSSION

### *Plaintiff Berisford's Motion to Join Additional Parties*

Federal Rule 17(a) specifies that "[n]o action shall be dismissed on the ground

that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed ... for ... joinder or substitution of the real party in interest...." Fed.R.Civ.P. 17(a). Plaintiff invokes this rule in attempting to join ENDF, the seller of the tin, and Seguros, ENDF's surety, as additional plaintiffs.

A suit may proceed to its conclusion even where the plaintiff initially filing a complaint is not the real party in interest, if this party is subsequently joined. *M.W. Zack Metal Co. v. S.S. Birmingham City*, 291 F.2d 451, 453 (2d Cir.1961); *American Dredging Co. v. Federal Insurance Co.*, 309 F.Supp. 425, 427–28 (S.D.N.Y.1970); 3A Moore's Federal Practice § 17.15–1, at 182 (2d ed. 1986). Although Defendant CSAV contends that this Court should deny plaintiff's request for amendment, "[t]he source of the limitations posited by defendant remains a mystery to the Court." *Motta v. Resource Shipping & Enterprises Co.*, 499 F.Supp. 1365, 1370 (S.D.N.Y.1980). The principal authority cited by CSAV in opposition to plaintiff's motion, *Delta Coal Program v. Libman*, 554 F.Supp. 684 (N.D. Ga.1982), *aff'd*, 743 F.2d 852 (11th Cir. 1984), allowed a joinder of parties similar to that sought by Plaintiff Berisford in the instant case. *Id.* at 690.

In this case, ENDF was the seller who, under the contract, was not paid for the missing tin and thus is out-of-pocket the cost of the missing ingots. Seguros is ENDF's insurer who presumably has made good the loss suffered by ENDF. Thus both are real parties in interest who should be in a position to enforce a judgment in favor of Berisford. Although Defendant CSAV complains of plaintiff's delay in making the instant motion, the lack of any involvement by ENDF or Seguros in the shipping transactions which form the basis of this litigation indicates that plaintiff's delay did not prejudice either CSAV of Third-Party Defendant UMS.

For the reasons set forth above, this Court grants plaintiff's motion to join ENDF and Seguros.

### Berisford's Motion for Summary Judgment

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.... By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord* Fed.R.Civ.P. 56(c). The Court of Appeals for this Circuit recently reaffirmed the Supreme Court's statement that where no genuine factual dispute exists, a district court should not decline to grant a summary judgment motion. "Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 912 (2d Cir.1986).

Plaintiff Berisford seeks summary judgment based on its receipt of bills of lading from Defendant CSAV, which represented that CSAV had received 6,000 ingots from ENDF. Berisford asserts that its receipt of the bills of lading is sufficient support for entry of summary judgment against CSAV and the other named defendants. In support of this argument, Berisford relies on the Carriage of Goods by Sea Act ("COGSA"), which states: "[A] bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described...." 46 U.S.C. 1303(4).

Plaintiff is aided by the fact that the instant controversy is not the first case in this circuit to consider a mysterious loss of tin. Berisford's argument recently received the explicit endorsement of the Second Circuit Court of Appeals in an almost identical case involving the same plaintiff. In *Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841 (2d Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2928, 91

L.Ed.2d 556 (1986), an appellate panel upheld a district court order of summary judgment for the plaintiff, where the defendant shipper delivered only 70 bundles of tin ingots to Berisford in New York, although bills of lading specified that the shipper had accepted possession 100 bundles of tin ingots in Brazil. *Id.* at 843. In support of its decision, the Court of Appeals noted:

> [A] ... bill of lading is a fundamental and vital pillar of international trade and commerce, indispensable to the conduct and financing of business involving the sale and transportation of goods between parties located at a distance from one another. It constitutes an acknowledgement by a carrier that it has received the described goods for shipment. It is also a contract for carriage. As a document of title it controls the possession of the goods themselves.

*Id.* at 845. *See also Oliver Straw Goods Corp. v. Osaka Shosen Kaisha,* 47 F.2d 878, 879–80 (2d Cir.) (L. Hand, J.), *cert. denied,* 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462 (1931). Further, the Court of Appeals held that even if the negligent conduct of a third-party had resulted in the loss of the thirty bundles of ingots before the defendant ever received the shipment, the shipper remained liable for the difference in number between the number of ingots received by plaintiff and the number specified in the bills of lading. "Regardless whether some third party stole the ingots, the carrier here was obligated to state truthfully what it had loaded." *Id.* at 848.

■ Defendant wholly ignores the Second Circuit's *Berisford* decision, and provides only a brief and ambiguous defense to plaintiff's summary judgment motion. Accordingly, Plaintiff Berisford's motion for summary judgment is granted.

### Third-Party Plaintiff CSAV's Motion for Summary Judgment

A second summary judgment motion is brought by Third-Party Plaintiff CSAV, which seeks a judgment for breach of warranty against Third-Party Defendant UMS, the stevedore which unloaded the ingots. In *Stein Hall & Co., Inc. v. S.S. Concordia Viking,* 494 F.2d 287 (2d Cir.1974), the Court of Appeals held that a stevedore's contract to unload a vessel includes "an implied warranty of workmanlike service," and that "[f]ailure on the part of the stevedore to explain what occurred to the cargo in its control gives rise to a presumption that the stevedore breached this implied warranty." *Id.* at 290. *See also Morse Electro Products Corp. v. S.S. Great Peace,* 437 F.Supp. 474, 493 (D.N.J.1977) ("[A]bsent even negligence of the stevedore, ... liability is imposed on it because it is in a better position to prevent misdelivery than is the carrier....").

■ The inadequate record produced by Third-Party Defendant UMS, which has presented nothing but a conclusory and unsupported statement that "after the cargo was discharged, it was counted," is such "a failure on the part of the stevedore to explain what occurred to the cargo in its control" as to establish a presumption that UMS breached its warranty. In comparison, Third-Party Plaintiff CSAV has produced abundant and specific testimony, gathered in both affidavits and depositions, that crew members counted the ingots and discovered no missing tin both when the Copiapo was loaded in Chile and unloaded in Newark. In addition, the precautions taken by CSAV to separate the tin from other cargo inside the Copiapo distinguishes the instant case from prior controversies where a shipper's negligence may have resulted in the loss of or damage to cargo. *Cf. Nitram, Inc. v. Cretan Life,* 599 F.2d 1359, 1368 (5th Cir.1979) (failure of shipper to install cargo battens or dunnage boards supports finding that shipper's negligence resulted in damage and loss of chemical shipment). On the basis of this record, the Court cannot find any genuine factual issue precluding a judgment in favor of CSAV.

Accordingly, CSAV's motion for summary judgment is granted.

## CONCLUSION

Plaintiff Berisford's motion to join ENDF and Seguros pursuant to Federal Rule 17 is granted. The summary judgment motions of Plaintiff Berisford is granted in favor of Berisford, ENDF, and Seguros. The summary judgment motion of Third-Party Plaintiff CSAV against Third-Party Defendant UMS is granted. The Court directs the parties within 30 days of the date of this order to submit an appropriate stipulation or settle a form of order establishing the amounts owed to plaintiffs and third-party plaintiff pursuant to these orders.

SO ORDERED.